**In re Ralph T. IANNELLI,
Jr., Bankrupt.**

**Gregory MANNING, Plaintiff,**

**v.**

**Ralph T. IANNELLI, Jr., Defendant.**

**Bankruptcy No. 77 B 657.**

United States Bankruptcy Court,
S. D. New York.

July 16, 1981.

Galef & Jacobs, New York City, for plaintiff.

William H. Burke, Newark, N. J., for defendant.

EDWARD J. RYAN, Bankruptcy Judge.

On February 21, 1974, Gregory Manning, the plaintiff, filed a complaint in the United States District Court for the Southern District of New York (the "1974 complaint") alleging that Ralph T. Iannelli, the bankrupt, and Pressman, Frolich & Frost, Inc. ("Pressman")[1] had violated the Securities Act of 1933, and the Securities Exchange Act of 1934 by inducing Manning to deliver $22,000 to them for the purchase of certain corporate securities. Manning sought recovery of the $22,000.

Pressman settled with Manning, but Iannelli neither answered nor defended against the charges. Consequently, a default judgment was entered against Iannelli on November 14, 1974.

On January 31, 1977, Iannelli was adjudicated a bankrupt on his voluntary petition. On March 30, 1977, Manning filed a complaint (the "bankruptcy complaint") in this court seeking to have the abovementioned debt declared non-dischargeable pursuant to clauses (2) and (4) of § 17(a) of the Bankruptcy Act. The bankruptcy complaint was similar to the 1974 complaint, except that all references to delivery of money to both Iannelli and Pressman were changed. The bankruptcy complaint alleged that the money was delivered only to Iannelli.

On July 14, 1978, at a hearing to determine the claim of non-dischargeability, Manning's attorney entered into evidence the 1974 complaint and default judgment.

In subsequent hearings no further evidence was introduced by Manning to support the claim. For the reasons stated below, this court adopts the bankrupt's Findings of Fact and Conclusions of Law. This debt is dischargeable. This renders it unnecessary to determine the effect of Pressman's settlement with Manning.

Section 17(a)(2) of the Bankruptcy Act provides that "[a] discharge in bankruptcy shall release a bankrupt from all of his provable debts, . . . except such as are liabilities for obtaining money or property by false pretenses or false representations." The bankrupt claims that he does not fall within this exception because no property was obtained by him. He supports this contention by noting the inconsistency between the 1974 complaint and the complaint before this court.[2]

In *Otto Gerdau Co. v. Radway*, 222 A.D. 107, 225 N.Y.S. 284, 286 (1927), it was held that in order to fall within the Section 17(a)(2) exception, the bankrupt must have obtained property and thereby "enriched his estate." Compare *In re Kunkle*, 40 F.2d 563 (E.D.Mich.1930), where the court held that the fraud exception "applies plainly to all such obtaining of property by the bankrupt, whether for himself of for anybody else."[3] *Id.* at 562. This court need not decide the "property" issue since there are other more compelling grounds to support our determination of dischargeability.

Plaintiff, relying on *National Homes Corp. v. Lester Industries*, 336 F.Supp. 644 (D.C.Va.1972), asserts that the judgment entered by the district court is res judicata and, consequently, that this court is confined to the district court's record in making its determination on the issue of dischargeability. The Supreme Court's decision in *Brown v. Felson*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767, 5 B.C.D. 226

1. Iannelli was a registered representative employed by Pressman.

2. In the 1974 complaint, plaintiff alleged that money was delivered to Iannelli and Pressman while in the present complaint, plaintiff alleges that only Iannelli received the money.

3. Collier supports this latter interpretation. 1A *Collier on Bankruptcy* ¶ 17.16[1] (14th ed. 1975), p. 1629.

(1979), is dispositive of the issue whether the bankruptcy court may consider matters dehors the record.

In *Brown v. Felson*, the court held that res judicata does not apply in determining whether a debt previously reduced to judgment is dischargeable under § 17 and that the "bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceeding." *Id.* at 138–139, 99 S.Ct. at 2212–2213.

■ However, the issue in the present case involves the principle of collateral estoppel, not res judicata.[4] In order for the doctrine of collateral estoppel to foreclose relitigation of an issue raised in a prior proceeding, four requirements must be met: "(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment." *In re Allen*, 3 B.R. 355, 357 (Bkrtcy.W.D.N.Y.1980). The threshold question in the instant case is whether the second requirement for establishing collateral estoppel has been satisfied. The Court of Appeals for the Second Circuit has specifically endorsed this requirement.

"The relevant issue [must have been] actually litigated and determined in the prior" proceeding. *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 58 (2d Cir. 1971) quoting *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955). In the case at bar no issues were actually litigated because the prior judgment was procured by default. Consequently, the doctrine of collateral estoppel does not bar relitigation by this court of the issues included in the default judgment.[5]

Assuming, arguendo, that this court were to give the default judgment collateral estoppel effect,[6] plaintiff still would not be entitled to the relief requested under the "identity of standards" test enunciated in *Brown v. Felson*, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10 (1979). The court in *Brown* addressed the collateral estoppel issue, stating that, "[i]f in the course of adjudicating a state-law question, a state court should determine factual issue *using standards identical to those of § 17*, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court." 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10 (1979).[7] (emphasis added). As noted,

4. The distinction between res judicata and collateral estoppel is that "res judicata forecloses all that which might have been litigated previously [while] collateral estoppel treats as final only those issues actually and necessarily decided in a prior suit." *Brown v. Felson*, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10 (1979) citing *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 326 n. 5, 58 L.Ed.2d 552 (1979); *Cromwell v. County of Sac*, 94 U.S. 351, 352–353, 96 S.Ct. 51–56, 24 L.Ed. 195 (1877).

5. Other bankruptcy courts which have addressed this issue have consistently reached the same conclusion. *See Note, Res Judicata and Collateral Estoppel in Bankruptcy Discharge Proceedings*, 37 Washington and Lee L.Rev. 281, 283 n. 14 (1980).

6. In New York default judgments are given collateral estoppel effect. *Fairchild, Arabatzis & Smith v. Prometco (Prod. & Metals)*, 470 F.Supp. 610, 617 (S.D.N.Y.1979) (citations omitted). This position, however, has been

criticized by several commentators. *See*, 5 Weinstein, Korn & Miller, *New York Civil Practice* § 5011.30 (1978 ed.); 1B *Moore's Federal Practice* ¶ 0.444(1) (2d ed. 1980); Rosenberg, *Collateral Estoppel in New York* 144 St. John's L.Rev. 165, 173–177 (1969).

7. Some bankruptcy commentators, however, have concluded that a bankruptcy court in determining dischargeability should not give collateral estoppel effect to a prior state court judgment. *See* 1A, *Collier on Bankruptcy*, ¶ 17.16 (14th ed. 1978); Countryman, *The New Dischargeability Law*, 45 Am.Bankr.L.J., 1, 49–50 (1971). *But see* 1 Cowans, *Bankruptcy Law and Practice* § 253 (1978). This position is predicated on the theory that "[w]hen it [the judgment] reaches the bankruptcy court the issue is one of dischargeability and not one of liability. While liability may have been adjudicated, the non-dischargeability of the liability has not been adjudicated." 1A *Collier on Bankruptcy*, § 17.16 (14th ed. 1978). *See also, In re Houtman*, 568 F.2d 651, 653–654 (9th Cir. 1978); *In re Pigge*, 539 F.2d 369, 371 (4th Cir. 1976).

*infra* at pg. 564, plaintiff must prove a § 17 exception by *clear and convincing evidence*. In the present case, the only violations alleged in the 1974 complaint were securities violations and the standard of proof of violation of a securities regulation is a fair preponderance of the evidence. *Stevens v. Abbott, Proctor & Pane v. Winston*, 288 F.Supp. 836, 847–848 (E.D.Va. 1968); 79 C.J.S.Supp. Securities Regulation § 147 (1974). *Cf., Collins Securities Corp. v. Securities & Exchange Commission*, 562 F.2d 820 (D.C.Cir.1977) (the clear and convincing standard is required in an administrative proceeding before the Securities and Exchange Commission in cases involving fraud allegations where an expulsion or substantial suspension order is issued as a sanction). Since the standard of proof in the prior federal proceeding differs from that required under the § 17(a)(2) exception, this court could not give collateral estoppel effect to the default judgment entered against Iannelli in the earlier proceeding even if the default judgment might otherwise have been given collateral estoppel effect.

 It must be noted that exceptions to dischargeability are to be construed strictly. *United States v. Syros*, 254 F.Supp. 195 (E.D.Mo.1966) citing *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915).[8] The burden is on the creditor to prove the exception. *Danns v. Household Finance Corp.*, 558 F.2d 114, 116 (2d Cir. 1977). Consistent with carrying out the purposes of the Bankruptcy Act and the intent of the § 17 exceptions to dischargeability, all of the elements must be proven by *clear and convincing evidence*. In re

*Lawrence*, 1 B.R. 402, 405 (Bkrtcy.S.D.N.Y. 1979) (citations omitted); *In re Huff*, 1 B.R. 354, 357 (Bkrtcy.N.D.Utah 1979). In order to fall within the purview of the § 17(a)(2) exception, there are five discernible elements to be borne by the objectant: (1) the debtor made the representation; (2) at the time he made the representations, the debtor knew they were false; (3) the debtor made them with the intention and purpose of deceiving the creditor; (4) the creditor relied on debtor's representations; and (5) the creditor sustained the alleged loss and damage as the proximate result of the representations having been made. *In re Burton*, 4 B.C.D. 569, 570 (S.D.N.Y.1978) quoting *In re Taylor*, 514 F.2d 1370, 1373 (9th Cir. 1975). In the instant case, the securities law violations alleged in the district court proceeding included each of the abovementioned elements.[9] However, the only evidence introduced by Manning was the 1974 complaint and default judgment. As indicated by the bankrupt in his conclusions of law, this is insufficient, as a matter of law, to establish non-dischargeability. In *In re McMillan*, 579 F.2d 289 (3d Cir. 1978) the creditor, as in this case, relied exclusively on a default judgment entered in a prior non-bankruptcy proceeding. The Third Circuit affirmed the bankruptcy judge's ruling that he was bound to ascertain for himself that the elements of an exception to dischargeability had been proven by the plaintiff and that mere reference to an earlier judgment was not sufficient. *Id.* at 291; *In re McKenna*, 4 B.R. 160 (Bkrtcy.N.D.Ill.1980).[10]

 Plaintiff further argues that the submission of the 1974 complaint and de-

8. *See, also, In re Burton*, 4 B.C.D. 569, 570 (S.D.N.Y.1978) quoting *In re Soika*, 365 F.Supp. 555, 556 (W.D.N.Y.1973) (exceptions are to be construed in favor of the bankrupt so far as reasonable).

9. The bankrupt in his conclusions of law asserts that the § 17(a)(2) exception requires proof of "actual fraud involving moral turpitude" and that the 1974 complaint only alleged securities laws violations which do not necessarily involve the requisite intent. The 1974 complaint did, however, allege a violation of Section 10(b) of the Securities Exchange Act of

1934 and, at the time the default judgment was entered, the Second Circuit required a showing that the defendant had actual knowledge or reckless disregard for the truth as a basis for a violation of § 10(b). *Lanza v. Drexel Co.*, 479 F.2d 1277, 1305 (2d Cir. 1973). Subsequently, this position received Supreme Court approval. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) [An allegation of scienter is necessary to state a private cause of action for damages under § 10(b).].

10. *See also*, fn. 7, *supra*.

fault judgment constitutes a *prima facie* case which must be controverted by the bankrupt. This assertion is clearly erroneous. The district court "record does not establish a *prima facie* case where it is based on a default judgment .... To allow a default judgment to have even the limited effect of forcing the defendant to rebut a *prima facie* case of fraud would defeat a major objective of the 1970 revision of the Bankruptcy Act which granted to the bankruptcy court jurisdiction to determine the question of dischargeability." *In re Wong*, 5 B.C.D. 222, 225 (D.Or.1979).

Since the 1974 complaint and default judgment were the only proof offered by Manning, Manning's bankruptcy complaint must fall for lack of adequate proof. Manning has not proven to this court that his claim against Iannelli is one that ought to be declared non-dischargeable pursuant to § 17(a)(2) of the Bankruptcy Act.

Lastly, the plaintiff asserts that the debt is non-dischargeable pursuant to § 17(a)(4). This section provides, in pertinent part, that "[a] discharge in bankruptcy shall release a bankrupt from all provable debts, ... except such as were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity." However, "[t]he term 'fiduciary' under this section [17(a)(4)] has been consistently construed as limited to express trusts and not to trust imposed *ex maleficio* —that is, trust imposed because of an act of wrongdoing out of which the debt arose—or to trust implied by the law from contracts." *In re Thornton*, 544 F.2d 1005, 1007 (9th Cir. 1976) citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934). Thus, Section 17(a)(4) does not apply to frauds of brokers. *In re Hawkins*, 16 CBC 161, 166 (E.D.Tenn.1978); 1A *Collier on Bankruptcy* ¶ 17.24(4) (14th ed. 1978). Since the relationship between the plaintiff and bankrupt is that of a broker and his customer, the bankrupt's debt does not fall within this exception.

The complaint is dismissed and the debt declared dischargeable.

Settle an appropriate order.