In re David R. COHEN, Debtor.

Mona BERKOWITZ, on Behalf of Amanda BERKOWITZ, Infant, Plaintiff,

v.

David R. COHEN, Defendant.

Bankruptcy No. 884–41904–20.
Adv. No. 885–0083.

United States Bankruptcy Court,
E.D. New York,
at Westbury.

July 18, 1986.

Charles S. Locks, Garden City, N.Y., for debtor.

John Amrod, Bloom & Amrod, Garden City, N.Y., for Mona Berkowitz.

## DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

This matter came to be heard on the complaint of Mona Berkowitz that the debtor owes her a non-dischargeable $63,000 debt for commissions she paid and options trading losses she suffered, because the debtor defrauded her while acting as her financial consultant. The court finds that the debtor defrauded Ms. Berkowitz and obtained commissions for himself as a result of his fraud. Under 11 U.S.C. § 523(a)(2)(A) the court hereby finds that the amount of the commissions is a non-dischargeable obligation. Since Ms. Berkowitz failed to file a complaint under 11 U.S.C. § 523(a)(6) governing willful and malicious injury, the court lacks discretion to find the trading losses she suffered non-dischargeable.

**10**

## FINDINGS OF FACT

1. Mona Berkowitz was widowed on February 23, 1979. Upon the death of her husband, she and her infant daughter, Amanda Berkowitz, inherited approximately $120,000 from the husband/father's estate.

2. The debtor was employed by Bache Halsey Stewart, Inc., (Bache) as a stockbroker, financial consultant, and investment executive.

3. In March of 1979, an attorney advised Ms. Berkowitz that Mr. Cohen could protect her inheritance and produce income for her. Mr. Cohen then came to Ms. Berkowitz's home and discussed investments he could make for her through Bache. During the course of that conversation, and during subsequent conversations, Mr. Cohen made the following representations to Ms. Berkowitz:

(a) Mr. Cohen had a lot of experience as a financial advisor.

(b) Mr. Cohen would personally manage Ms. Berkowitz's account using his own investment strategy.

(c) Mr. Cohen would invest Ms. Berkowitz's funds conservatively so that she would never lose her principal, while generating income sufficient for her needs.

4. Mr. Cohen made the representations referred to with the intention of deceiving Ms. Berkowitz to induce her to maintain a trading account with Bache, with Mr. Cohen as investment executive.

5. Ms. Berkowitz relied on Mr. Cohen's representations and opened an account with him in March of 1979, of about $120,000.

6. Mr. Cohen did not advise Ms. Berkowitz that he intended to invest any or all of her funds in options.

7. Mr. Cohen intentionally misled Ms. Berkowitz on numerous occasions when she questioned him about her account, by advising her that her account was making money.

8. Ms. Berkowitz never signed a "Discretionary Account Agreement" with Bache. Therefore, Mr. Cohen was prohibited from making trades for Ms. Berkowitz without her permission.

9. Mr. Cohen sent Ms. Berkowitz a monthly payment from her account. He told her that her principal was safe, and that the monthly payments were interest generated by investments. Actually, Mr. Cohen used Ms. Berkowitz's funds for speculation in the options market with very bad results. Mr. Cohen made over 600 transactions in stock options and transferred over $30,000 to himself for commissions; all without the knowledge, understanding or consent of Ms. Berkowitz.

10. Further, Mr. Cohen failed to have Ms. Berkowitz's account approved for uncovered option trading with Bache's registered option principal. At one point, Mr. Cohen called Ms. Berkowitz and told her that his manager was going to call her and question her about her account and whether she was satisfied with his performance. Mr. Cohen told Ms. Berkowitz to tell the manager that she was happy with the account, and if she had any questions she should discuss them with defendant directly.

11. By the time Ms. Berkowitz closed her account at Bache in June 1981, she was left with approximately $47,000 of the $120,000 she entrusted to Mr. Cohen.

## DISCUSSION

The Bankruptcy Code allows debtors to discharge debts to give individuals a fresh start without the burden of financial pressures. In weighing the need for a fresh start against competing social policies, Congress legislated several categories of nondischargeable debts. The two that apply to this case are debts obtained by fraud, and debts for willful and malicious injury.

Under 11 U.S.C. § 523(a)(2)(A), an individual debtor is denied discharge for any debt for money obtained by false pretenses, false representations or actual fraud. The creditor must establish that:

(1) the debtor made the representations;

(2) at the time he made the representations, the debtor knew they were false;

(3) the debtor made them with the intention and purpose of deceiving the creditor;

(4) the creditor relied on the debtor's representations;

(5) the creditor sustained the alleged loss and damage as the proximate result of the representations having been made. *In re Ianelli,* 12 B.R. 561 (S.D.N.Y.1981); *In re Burton,* 4 B.C.D. 569, 570 (S.D.N.Y.1978); *In re Taylor,* 514 F.2d 1370, 1373 (9th Cir.1975), citing *Sweet v. Ritter Finance Co.,* 263 F.Supp. 540, 543 (W.D.Va.1967).

In this case:

(1) Mr. Cohen represented to Ms. Berkowitz that he would invest her money conservatively and that any trades would be subject to her approval. Later, Mr. Cohen falsely represented to Ms. Berkowitz that the payments he was sending her represented income, not principal.

(2) Mr. Cohen never intended to invest Ms. Berkowitz's money in any other investment but options, and options trading is very risky. Therefore, he knew his representation of conservative investment was false. Mr. Cohen also knew he was lying when he told Ms. Berkowitz her monthly payments were from interest. Finally, Mr. Cohen never intended to ask Ms. Berkowitz's permission to make the trades he contemplated.

(3) Mr. Cohen made the false representations to deceive Ms. Berkowitz. At first, he falsely represented that he would invest her money conservatively so that he could get her business. He later lied to her about the source of payments to keep her business. The commissions he earned in only 2 years, (over $30,000 on a $120,000 account) strongly suggest that he was engaged in the forbidden practice of churning.

(4) Ms. Berkowitz, unfortunately, relied on Mr. Cohen's representations. She allowed him to take command of her assets because she trusted that her money would be invested safely, and she did not pull her money from Bache sooner because she believed her payments represented interest.

(5) Ms. Berkowitz sustained damages equal to the amount of commissions obtained by Mr. Cohen. For a debt to be nondischargeable under 11 U.S.C. § 523(a)(2)(A), the debtor *himself* must "obtain" money by fraud. *In re Jacobs,* 54 B.R. 791 (Bankr.E.D.N.Y.1985). In this case, the debtor acted solely in his capacity as broker when he made trades, and thus Mr. Cohen himself did not obtain money by fraud except for his commissions.

Ms. Berkowitz must explicitly complain for relief under 11 U.S.C. § 523(a)(6) to make her losses above and beyond Mr. Cohen's commissions, (the money lost on trades), non-dischargeable. Unfortunately for Ms. Berkowitz, the court cannot reach the issue of willful and malicious injury in the absence of a creditor's explicit complaint. 11 U.S.C. § 523(c).

Accordingly, Mr. Cohen's debt to Ms. Berkowitz for commissions obtained by him while managing her account is hereby declared non-dischargeable and Ms. Berkowitz is directed to settle an order upon the debtor setting forth the amount of the commissions she paid to him plus interest at the applicable rate.

SO ORDERED.