In re John D. STIVERS f/d/b/a
Tidy Car, Debtor.

SECURITY TITLE & GUARANTY
COMPANY, Plaintiff,

v.

John D. STIVERS f/d/b/a Tidy
Car, Defendant.

Bankruptcy No. 87–03563–BKC–TCB.
Adv. No. 88–0016–BKC–TCB–A.

United States Bankruptcy Court,
S.D. Florida.

Feb. 22, 1988.

---

David R. Softness, Greenberg, Traurig, Askew, Hoffman, Lipoff, Rosen & Quental, P.A., Miami, Fla., for plaintiff.

John D. Stivers, pro se.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

The plaintiff creditor seeks exception from discharge for its $51,734 claim under 11 U.S.C. § 523(a)(2)(A).[1] The debtor, who has no attorney, has answered. The matter was tried February 9. I now conclude that plaintiff has failed to prove its allegations.

The facts are not in dispute. Plaintiff has relied solely on documents and the debtor's testimony.

When the debtor and his wife sold their New York home on August 22, 1986, the plaintiff insured the vendee's title. At the closing, plaintiff demanded and received a handwritten affidavit from the debtor and his wife certifying to plaintiff's closing agent that:

"We hereby certify to H.V. Abstract Corp that we have received the satisfaction of mortgage of the mortgage of

Marine Midland Bank recorded in Liber 2293 of mortgages at page 1 in the Orange County clerk's office, and have recorded same in the Orange County Clerks Office." (P Ex 6).

At the closing, plaintiff also received from the debtor a clerk's receipt dated July 25, 1986 for the recordation fee of an unidentified mortgage satisfaction dated July 16, 1986. (P Ex 4).

In fact, the mortgage recorded in Liber 2293, which secured a $50,000 line of credit and had been recorded two months earlier (on June 18), had not been satisfied and no satisfaction had been recorded. In December 1987 plaintiff purchased an assignment of the mortgage and claims to have indemnified the vendee in the amount it now seeks.[2]

Plaintiff's pre-closing title search revealed three mortgages: (1) A first lien of $95,900 to Middletown Savings Bank, which was satisfied at the closing; (2) A second lien of $8,500 to Marine Midland Bank satisfied before the closing. The clerk's receipt described above was issued for the recordation of *this* satisfaction; (3) A third lien of $50,000 to Marine Midland to secure a line of credit in that amount. It is this third lien which was recorded at Liber 2293 and which was not satisfied at or before the closing.

At the closing, both plaintiff and the debtor were represented by counsel. Plaintiff's agent asked the debtor if "the" Marine Midland mortgage was taken care of, without at any time identifying which mortgage he meant. The debtor, understanding the question to relate to the second lien, said it was satisfied and produced the receipt for the recordation of that satisfaction, which his attorney had told him to pick up from the clerk's office.

The affidavit was drafted at the closing, but not by the debtor. It was signed by him at the direction of his attorney. He did not know and was never told that it

---

1. There were also allegations under subsection (a)(4) and (6), but the only allegation plaintiff has argued is under (a)(2)(A).

2. Exhibit A challenges the amount of this claim. Plaintiff has not proved its damages, and in view of the decision in this adversary proceeding, its bankruptcy claim is denied.

referred to a third lien, rather than the satisfied second lien.

The debtor had had many loans from Marine Midland and knew he was indebted to them on account of the $50,000 line of credit. However, the only charge against that facility before the closing was the satisfaction, for less than $8,000, of the balance then due on the second lien.

The debtor has always paid all his loans on time and did not realize that the line of credit was secured by a mortgage lien. He was first billed by Marine Midland on that loan on September 22, 1986 (one month after the closing) in the amount of $12,469. He paid that balance promptly. (D Ex A).

At the closing, plaintiff's agent on its own initiative phoned Marine Midland to verify satisfaction of "the" mortgage and its satisfaction was acknowledged by telephone. I infer that the inquiry was such that the bank's agent understood the call to relate to the second mortgage rather than the third lien securing the line of credit. There is no charge that the bank conspired with the debtor to deceive plaintiff.

### Actual Intent to Deceive

■ It is plaintiff's burden to prove by clear and convincing evidence that the debtor had an actual rather than a constructive intent to deceive plaintiff by an untrue representation. *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986). I find that the debtor had no intent to deceive plaintiff.

■ That intent may be inferred from a debtor's reckless disregard for the truth. *Birmingham Trust Nat'l Bank v. Case*, 755 F.2d 1474, 1476 (11th Cir.1985):

"we hold that reckless disregard for the truth or falsity of a statement constitutes a 'false representation' under § 523(a)(2)(A) of the Bankruptcy Code."

I find that the debtor exhibited no reckless disregard for the truth.

Plaintiff would have me disbelieve the debtor and infer that intent from the affidavit and the clerk's receipt coupled with the fact that the debtor, a payroll clerk, has a degree in business administration, had taken one course in real estate, and had executed at least two prior mortgages. I disagree.

I cannot believe that a man of this debtor's sophistication could have intended to deceive a title company through these two documents. Plaintiff has admitted it came to the closing with knowledge of the unsatisfied $50,000 lien. Only a very unsophisticated layman could hope to deceive a title company, represented by counsel, with those two documents. And if the debtor had that intent, he certainly would not have paid over $12,000 to satisfy that lien two months after the closing.

### Reasonable Reliance by Plaintiff

■ It is also plaintiff's burden to prove by clear and convincing evidence that:

"the creditor relied on such representation; [and that] such reliance was reasonably founded." *In re Hunter, supra.* "Of course, the reasonableness of a creditor's reliance will be evaluated according to the particular facts and circumstances present in a given case." *In re Mullet*, 817 F.2d 677, 679 (10th Cir.1987).

In *Simmons v. Landon (In re Landon)*, 37 B.R. 568, 571 (Bankr.N.D.Ohio 1984), the failure of the purchaser, a real estate salesman, to verify the vendor's title or to purchase title insurance precluded reliance on the debtor/vendor's representation that there was no outstanding second mortgage. The court said:

"Where representations are made regarding certain aspects of a real estate transaction which are subject to inspection and verification by the purchaser, and where they have had an opportunity to investigate, a purchaser will not have a cause of action for fraud even though the representations are untrue." *Id.* at 570.

*See also Kovitz v. Tesmetges (In re Tesmetges)*, 74 B.R. 11, 916–17 (Bankr.E.D.N.Y.1987). Where a second mortgagee, who was an attorney, loaned money on the debtor's representation that he had a binding contract to sell the property for enough to repay all loans, the reliance was held unreasonable.

■ I find that plaintiff did not in fact rely upon the debtor's affidavit or the clerk's certificate furnished by the debtor. It relied on the telephone call by its agent to the mortgagee bank. If, however, it had relied on the debtor, that reliance was unreasonable.

I am surprised that this plaintiff/title company publicly volunteered that it neither verified the public record nor escrowed the amount of the lien until the public record reflected satisfaction of all liens. These precautions were readily available and would mark the minimum standard of care expected of a title company.

I believe the proximate cause of plaintiff's loss was the gross negligence of its closing agent which was in no respect attributable to the debtor.

As is required by B.R. 9021(a), a separate judgment will be entered dismissing this complaint with prejudice.