**In re Alvin BILLINGS, Debtor.**

**Janice GRAHAM, Plaintiff,**

v.

**Alvin BILLINGS, Defendant.**

**Bankruptcy No. 187–70943–353.**
**Adv. No. 187–0172–353.**

United States Bankruptcy Court,
E.D. New York.

Jan. 6, 1989.

**804**

Neil R. Flaum, Great Neck, N.Y., for debtor-defendant.

Andrew C. Morganstern, Philip Irwin Aaron, P.C., Jericho, N.Y., for plaintiff.

## OPINION ON MOTION FOR SUMMARY JUDGMENT

JEROME FELLER, Bankruptcy Judge.

Before the Court is a motion for summary judgment of Janice Graham ("Graham" or "Plaintiff") in Adversary Proceeding No. 187–0172–353.[1] This adversary proceeding was commenced to have a debt owed to. Graham by Alvin Billings ("Bill-

---

1. Though Janice Graham is the named Plaintiff in this adversary proceeding, the actual plaintiff is the estate of Janice Graham, now deceased.

ings" or "Debtor") declared nondischargeable under the exceptions to dischargeability set forth in 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6). The gravamen of the motion rests upon application of the collateral estoppel doctrine to a pre-filing default judgment obtained by Graham against Billings in a non-bankruptcy forum. Finding that invocation of the collateral estoppel doctrine is improper herein and that genuine issues of material fact abound and need be tried, we deny Graham's motion for summary judgment.

### Factual Background

The instant dispute stems from a written agreement between the parties ("the agreement") pursuant to which Graham transferred, in June of 1981, a sum of $122,247 to a discretionary brokerage account which Billings, an investment adviser, agreed to manage for a prescribed fee. It is asserted that prior to opening the account, Graham discussed what is described as her conservative investment objectives with Billings. These claimed objectives may have been accommodated by provisions of the agreement which required her approval of transactions involving more than $10,000 and that the account be traded on a cash basis only, not as a margin account. (agreement at ¶¶ 13 and 14). However, the agreement also provided that while 75% of the account would be invested in income producing securities with "safety of principal" as a prime goal, the remaining 25% of the account could be invested in securities which "have capital gains potential as a prime goal", an obvious reference to somewhat risky or speculative investments. (*Id.* at ¶ 3). The agreement also stated that the "investment manager does not guarantee the results" of these investment policies. (*Id.* at ¶ 4).

By June of 1982, the value of Graham's account managed by Billings had dropped to $69,744 and she apparently attributed the loss to fraud, misconduct and bad faith in Billings' management of the account during the previous year. Consequently, on or about October 6, 1982, she brought an action in the United States District Court for the Eastern District of New York against the Debtor, Alvin Billings; the company through which he contracted with Graham, Billings Investors Associates, Inc.; and three other corporate defendants who it appears served as the broker-dealers for the securities activities and transactions the Debtor conducted on behalf of Graham. (*Janice Graham v. Alvin Billings, Billings Investors Associates, Inc., Gilford Securities Inc., Unified Securities Corporation and Securities Settlement Corporation*, Docket No. CV 82–3027 (TCP), hereinafter "the District Court Action"). The complaint filed in the District Court Action alleges that the Debtor violated the parties' written agreement; Section 17(a) of the Securities Act of 1933, as amended, 15 U.S.C. § 77q(a); Section 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. 78j(b) and Rule 10(b)–5 promulgated thereunder, 17 CFR 240.10b–5, by his alleged fraudulent and deceitful conduct in trading her account. [District Court Complaint at ¶ 30].

Graham alleged that through false representations and omissions as to his knowledge of securities, and deceptive guarantees and promises of profit on securities investments he "knew or should have known" were "highly speculative", the Debtor fraudulently procured her reliance. (District Court Complaint at ¶ 60 and 62). Graham claimed that since she was not a wealthy, sophisticated or experienced investor (*Id.* at ¶ 69), she relied upon such representations and omissions initially to contract with the Debtor and subsequently, to acquiesce in the speculative trading of her account. Graham also alleged, though not as a separate cause of action, that the Debtor "churned" her account, conducting an excessive number of transactions solely for the purpose of generating commissions (*Id.* at ¶ 65), and eventually withdrew from the account "approximately $50,000 consisting of commissions ... plus interest charges and transfer taxes." (*Id.* at ¶ 42). Then, she claimed, in June of 1982, he liquidated her account contrary to her instructions. (*Id.* at ¶ 47). She sought $125,000 in compensatory damages and $300,000 in punitive damages plus attorney's fees.

Graham settled with the broker-dealer defendants, but the Debtor neither answered nor defended against the charges. An inquest was held before the District Court on July 15, 1983 to assess the amount of damages, and in July, 1984 a default judgment was entered against the Debtor in the sum of $72,191.84 for compensatory damages, including interest and costs. The District Court did not award plaintiff punitive damages or attorneys' fees.

The Debtor states that the default was no fault of his own, that it was involuntary. He does not deny having been served with process in March, 1983 at the place of his employment. However, the Debtor says he left that employment in the beginning of April, 1983. On April 23, 1983, allegedly in dire financial straits at that point, he tried to appear in the District Court Action by attempting to file an answer denying Graham's claims and allegations, accompanied by an application to proceed in *forma pauperis*. The Debtor further states that he never received the response to his *forma pauperis* application because the notice of the District Court's denial, dated April 27, 1983, was sent to what was by then his former place of employment. Thus, the Debtor represents that he had no notice that his request to proceed in *forma pauperis* was denied, that an inquest had been held or, for that matter, that a default judgment had been entered against him until April, 1987, when Graham commenced an action in Queens County Supreme Court to, in effect, collect the judgment. Only then, upon requisitioning the files of the District Court Action did the Debtor assertedly learn all that had transpired. (Billings Affidavit In Opposition at ¶ 14–16 and Exhibits A and B, annexed thereto).

On May 7, 1987, soon after Graham brought suit in Queens County Supreme Court, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 187–70943–353. The Queens County action thus stayed, Graham filed a complaint commencing an adversary proceeding in this Court objecting to both the dischargeability of the judgment debt and the discharge of the Debtor.

The allegations in the District Court complaint are essentially repeated in the adversary complaint filed in this Court, though they are somewhat crafted to conform to the requirements for exception to discharge under the Bankruptcy Code. In the first cause of action, Plaintiff reiterates allegations in the District Court complaint relating to the Debtor's misrepresentations as to his knowledge, experience and competence in the field of securities (Adversary Complaint at ¶ 8), the Debtor's false assurances that he would invest her money conservatively and not engage in margin transactions (*Id.* at ¶ 13), and his "churning" of the account to amass $50,000 in commissions (*Id.* at ¶ 21). She asserts that the judgment debt should therefore be declared nondischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), which excepts from discharge any debt "for money . . . to the extent obtained by false pretenses, a false representation, or actual fraud". In a second cause of action, Plaintiff realleges the allegations concerning her lack of knowledge and sophistication in the field of securities and her reliance upon the Debtor's representations of experience in that field, and seeks to declare the debt nondischargeable pursuant to Section 523(a)(4) of the Bankruptcy Code, 11 U.S.C. § 523(a)(4). This provision excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." In a third cause of action Plaintiff asserts that the sums obtained by the Debtor for commissions, fees and other charges, and the losses sustained as a result of the trading in her account are nondischargeable pursuant to Section 523(a)(6) of the Bankruptcy Code, 11 U.S.C. § 523(a)(6). This provision excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity".

In his answer to the complaint filed in the adversary proceeding and in all subsequent submissions made in opposition to the summary judgment motion, the Debtor denies all allegations of fraud and misconduct. Basically, the Debtor asserts that: i) the agreement between the parties does

indeed allow for some speculative trading; ii) speculative transactions, if any, and margin trading were conducted with the informed consent of the client; iii) the losses were, at the worst, the result of an investment adviser's good faith errors in judgment; and iv) he did not draw, and could not have drawn, commissions from the account since he was an investment adviser and not a broker.

Plaintiff moves for summary judgment pursuant to Fed.R.Civ.P. 56, made applicable herein by Bankruptcy Rule 7056, as to the dischargeability causes of action.[2] In support of her motion, Plaintiff has offered copies of the agreement, brokerage account statements, complaint and default judgment in the District Court Action. In addition, Plaintiff offers an April 5, 1988 affidavit of Robert Semensohn, an attorney acquainted with Plaintiff personally and professionally and who it appears testified at the inquest conducted in the District Court Action on July 15, 1983. Despite the efforts of Plaintiff's counsel, the minutes of said inquest have not been produced.

## DISCUSSION

The issue before the Court is the dischargeability under 11 U.S.C. § 523 of a debt predicated upon a pre-filing judgment obtained in a non-bankruptcy forum. Resolution of this issue necessitates weighing conflicting policies of laying to rest matters already determined by other judicial forums, as opposed to affording the bankruptcy court an opportunity to fulfill its duty of deciding dischargeability questions.

Judicial finality is a fundamental tenet of our jurisprudence. Its proper application requires understanding the distinction between two important concepts—res judicata and collateral estoppel.[3] The doctrine of res judicata, or claim preclusion, is distinguishable from the principle of collateral estoppel in that res judicata forecloses all that which might have been litigated previously by the parties, whereas collateral estoppel, or issue preclusion, treats as final only those issues actually and necessarily decided in a prior suit. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *Brown v. Felsen*, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979).

Analysis of the preclusive effect to be accorded pre-bankruptcy judgments in dischargeability proceedings must begin with *Brown v. Felsen, supra.* In *Brown v. Felsen*, the Supreme Court resolved a conflict among the circuits by holding that a bankruptcy court is not barred by res judicata from determining, independent of the prior judgment of a non-bankruptcy forum, the nature of the debt to determine its dischargeability. The holding is bottomed on the 1970 amendments to the former Bankruptcy Act, carried forward under the Bankruptcy Code of 1978 in 11 U.S.C. § 523(c), granting the bankruptcy courts exclusive jurisdiction to determine the dischargeability of debts now contained under 11 U.S.C. § 523(a)(2), (4) and (6). The Supreme Court thus ruled that res judicata, or claim preclusion, is inapplicable to such dischargeability proceedings for its application would impermissibly countenance final determinations of dischargeability by a non-bankruptcy forum. Whether or not collateral estoppel, or issue preclusion, may be utilized was specifically left unresolved by the Supreme Court in *Brown v. Felsen.* The Supreme Court, however, in its oft-cited "footnote 10" (442 U.S. at 139, 99 S.Ct. at 2213) suggested that if the non-bankruptcy forum determined factual issues, "using standards identical to those of § 17

---

**2.** Plaintiff's motion for summary judgment is directed only to the three causes of action alleged in her complaint attacking the dischargeability of the debt. The cause of action objecting to the Debtor's discharge pursuant to 11 U.S.C. § 727 for filing "inaccurate, incomplete and improper" schedules is not encompassed by the summary judgment motion.

**3.** In papers filed and in argument, Plaintiff hopelessly confused the doctrines of res judicata and collateral estoppel. Seemingly equating the two, Plaintiff moves for summary judgment pursuant to both doctrines. As pointed out, *infra*, the motion could only be brought on the basis of collateral estoppel and not res judicata.

[of the former Bankruptcy Act, now 11 U.S.C. § 523], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court."

Since *Brown v. Felsen,* all Circuits that have considered the question, with the exception of the Ninth Circuit, have held that where all the requirements of collateral estoppel are met, collateral estoppel properly precludes the relitigation of factual issues in subsequent dischargeability proceedings. *Klemens v. Wallace (In re Wallace),* 840 F.2d 762, 764–65 (10th Cir.1988); *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987); *Sunco Sale, Inc. v. Latch (In re Latch),* 820 F.2d 1163, 1166 (11th Cir.1987); *Harold V. Simpson and Company v. Shuler (In re Shuler),* 722 F.2d 1253, 1255 (5th Cir.), *cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984); *Spilman v. Harley,* 656 F.2d 224, 228 (6th Cir.1981); *Matter of Ross,* 602 F.2d 604, 607–08 (3rd Cir.1979); *Contra., Gregg v. Rahm (In re Rahm),* 641 F.2d 755, 757 (9th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981). (Prior judgment of non-bankruptcy forum has no collateral estoppel effect, but may establish prima facie case of non-dischargeability). As the Sixth Circuit in *Spilman v. Harley, supra,* 656 F.2d at 227, so accurately pointed out:

> Applying collateral estoppel is logically consistent with the Supreme Court's decision in *Brown* and the exclusive jurisdiction of the bankruptcy courts while at the same time encouraging judicial economy. The determination whether or not a certain debt is dischargeable is a legal conclusion based upon facts in the case. The bankruptcy court has the exclusive jurisdiction to make the legal conclusion. It must apply the statute to the facts and decide to discharge or not.... [and] that Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts.

We turn now to an examination of whether Plaintiff has met the requirements for invoking the collateral estoppel doctrine. Cases and authorities have formulated a four-pronged test, all of which must be satisfied for collateral estoppel to be triggered:

> (1) the issue sought to be precluded must have been actually litigated;
>
> (2) that issue must be the same as that involved in the prior action;
>
> (3) it must have been determined by a valid and final judgment; and
>
> (4) the determination must have been essential to the prior judgment.

*Matter of Ross, supra,* 602 F.2d at 608; *Matter of McMillan,* 579 F.2d 289, 291–92 (3rd Cir.1978); *Manning v. Iannelli (In re Iannelli),* 12 B.R. 561, 563 (Bkrtcy.S.D.N.Y.1981); Restatement (Second) of Judgments § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.")

*Actually Litigated*

■ Where, as here, the prior judgment obtained in the non-bankruptcy action was obtained by default, the relevant issues have not been actually litigated and accordingly collateral estoppel does not bar the defendant in the non-bankruptcy action from attempting to prove facts necessary to defeat such an action in the context of a later dischargeability proceeding. *Spilman v. Harley, supra,* 656 F.2d at 228; *Matter of McMillan, supra,* 579 F.2d 289, 292–93; *Ward v. Roberson, (In re Roberson),* 92 B.R. 263, 264 (Bkrtcy.S.D.Ohio 1988); *Sixteen Twenty–Eight Bellevue Limited Partnership v. Barigian (In re Barigian),* 72 B.R. 407, 410 (Brktcy.C.D. Cal.1987); *Benson v. Haskin (In re Haskin),* 68 B.R. 370, 372 (Bkrtcy.S.D.Ohio 1986); *Zeunert v. Brink (In re Brink),* 27 B.R. 377, 379 (Bkrtcy.W.D.Wis.1983); *Kramer v. Joseph (In re Joseph),* 22 B.R. 319, 321 (Bkrtcy.E.D.N.Y.1982); *Berkfield v. Goodman (In re Goodman),* 25 B.R. 932, 939 (Bkrtcy.N.D.Ill.1982); *In re Iannelli, supra,* 12 B.R. at 563; Restatement (Second) of Judgments, § 27 comment e

(1982) ("In the case of a judgment entered by ... default, none of the issues is actually litigated.")

Plaintiff is adamant in the view that a default judgment should be given collateral estoppel effect, arguing that a default has the effect of admitting all well pleaded facts in the complaint filed in the District Court Action and the resultant default judgment is as conclusive an adjudication as a judgment rendered after a trial on the merits.

This argument is without merit for it is based on a fundamental misunderstanding of the legal and practical meaning of a default judgment. Long ago the Supreme Court taught that, "[a] judgment by default only admits for the purpose of the action the legality of the demand or claim in suit: it does not make the allegations of the declaration or complaint evidence in an action upon a different claim." *Cromwell v. County of Sac*, 94 U.S. 351, 356, 24 L.Ed. 195 (1876). Even this limited "admission" may well be only a legal fiction, as often times a defendant, as Debtor asserts here, defaults in a lawsuit for reasons other than admission of all of the allegations in a complaint. Moreover, as some courts have emphasized in rejecting the collateral estoppel effect of default judgments, "[t]he requirement that the issues sought to be estopped must have been 'actually litigated' in the prior proceeding contemplates something more than a one-sided presentation of the facts." *Franks v. Thomason*, 4 B.R. 814, 822 (N.D.Ga.1980); *Tolbert v. Clay (In re Clay)*, 64 B.R. 313, 315 (Bkrtcy.N.D.Ga.1986).

Plaintiff cites *Jones v. Wilson (In re Wilson)*, 72 B.R. 956 (Bkrtcy.M.D.Florida 1987), for the propositions that a default judgment satisfies the "actually litigated" requirement for purposes of collateral estoppel in a subsequent dischargeability proceeding and that "[i]t would be undeserved to give debtor/defendant a second bite at the apple when he knowingly chose not to

defend himself in the first instance." *Id.*, 72 B.R. at 959. The *Wilson* case is inapposite. Unlike our case, in *Wilson*, the district court judge in the prior proceeding conducted a full hearing, announced findings of fact and conclusions of law and issued a memorandum opinion and judgment. Further, in our case, the uncontroverted evidence tends to show that Billings has never had even a nibble at the judicial apple. As indicated above, Billings has filed an affidavit swearing that he had no notice of the denial of his *forma pauperis* applications, the inquest, or even entry of the default judgment until April 1987.[4]

In a final salvo, Plaintiff asserts that the inquest conducted on July 15, 1983 satisfies the "actually litigated" requisite of collateral estoppel. We are not persuaded in the slightest. As a general proposition, efforts in an inquest to prove monetary damages in a default proceeding do not constitute litigation on factual issues. Moreover, the minutes of the inquest have not been produced. Thus, this Court remains thoroughly uninformed as to what the district court judge heard at the inquest, the parties present, persons who testified, evidence adduced and whether the district court judge made any findings of fact and conclusions of law. However, we do know from the text of the default judgment, that whatever the district court judge did hear at the inquest, it did not move him to award punitive damages or attorneys fees.

*Identity of the Issues*

In the case at bar, the identity of issues requirement for collateral estoppel is also lacking. Where the standard of proof in the prior proceeding differs from that required in bankruptcy, the bankruptcy court may not give collateral estoppel effect to the earlier judgment. *Brown v. Felsen, supra*, 442 U.S. at 139, n. 10, 99 S.Ct. at 2213, n. 10. Obviously, varying

---

4. Under these circumstances, it may well be that Billings was not afforded a "full and fair opportunity" to litigate the issues in the District Court Action. *See, Allen v. McCurry*, 449 U.S. 90, 104, 101 S.Ct. 411, 420, 66 L.Ed.2d 308 (1980); *Kling-*

*man v. Levinson*, 831 F.2d at 1295 (Collateral estoppel requires that the party against whom estoppel is invoked must be fully represented in the prior action.)

standards of proof can negate the identity between the issues to be determined in the two proceedings. Accordingly, issue preclusion is improper if the party seeking preclusion had a less burdensome standard of proof in the pre-bankruptcy action than he has in the subsequent dischargeability proceeding. *Chang v. Daniels (In re Daniels)*, 91 B.R. 981, 984–85 (Bkrtcy.M.D.Fl. 1988); *Morehead v. Peoni (In re Peoni)*, 67 B.R. 288, 290 (Bkrtcy.S.D.Ind.1986); *Henderson v. D'Annolfo (In re D'Annolfo)* 54 B.R. 887, 889 (Bkrtcy.D.Mass.1985); *Fine v. Marks (In re Marks)*, 40 B.R. 614, 617–19 (Bkrtcy.D.S.C.1984); *MA & M Incorporated v. Supple (In re Supple)*, 14 B.R. 898, 904 (Bkrtcy.D.Conn.1981); *In re Iannelli, supra,* 12 B.R. at 564; Restatement (Second) of Judgments, § 28(4) (1982); *Ferriell, The Preclusive Effect of State Court Decisions in Bankruptcy,* 58 Am. Bankr.L.J. 349, 362–63 (1984).

The District Court Action instituted by Plaintiff in 1982 was a civil action seeking damages for alleged violations of the anti-fraud provisions of the federal securities laws. The Supreme Court has held that in an action for fraud under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) and § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 CFR 240.10b–5, a plaintiff must establish liability by a preponderance of the evidence. *Herman & Maclean v. Huddleston,* 459 U.S. 375, 387–390; 103 S.Ct. 683, 690–692, 74 L.Ed.2d 548 (1983); *Securities and Exchange Commission v. C.M. Joiner Leasing Corporation,* 320 U.S. 344, 355, 64 S.Ct. 120, 125, 88 L.Ed. 88 (1943).

■ The Bankruptcy Code is silent as to the standard of proof necessary to establish the exceptions to discharge under 11 U.S.C. § 523(a)(2), (4) and (6). We thus look to the decisional authorities. The Court of Appeals in each Circuit that has spoken to the standard of proof, with the recent exception of the Fourth Circuit, all hold that the "clear and convincing" evidentiary standard is applicable to dischargeability proceedings. *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1262 (11th Cir.1988); *Caspers v. Van Horne (In the Matter of Van Horne)*, 823 F.2d 1285, 1287 (8th Cir.1987); *Schweig v. Hunter, (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir. 1986); *Driggs v. Black (In re Black)*, 787 F.2d 503, 505 (10th Cir.1986); *Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 932 (6th Cir.1986); *First National Bank of Red Bud v. Kimzey (In re Kimzey)*, 761 F.2d 421, 423–24 (7th Cir.1985); *Contra, Combs v. Richardson,* 838 F.2d 112, 116 (4th Cir.1988) (applying preponderance of evidence standard). Similarly, the "overwhelming majority of bankruptcy courts" apply the clear and convincing standard in dischargeability proceedings. *Ferriell, supra,* at 362 n. 84.[5] In light of the strong underlying policy of the Bankruptcy Code of fostering a "fresh start" to debtors unhampered by the pressures and discouragement of pre-existing debt, we join the majority of courts in holding that the appropriate measure of proof in dischargeability proceedings is the clear and convincing standard.

■ In sum, applicability of the less stringent preponderance of the evidence standard in the District Court Action seeking damages for violation of the anti-fraud provisions of the federal securities laws precludes the application of collateral estoppel in the instant bankruptcy dischargeability proceeding.

**5.** *See, e.g., Kovitz v. Tesmetges (In re Tesmetges)*, 74 B.R. 911, 915 (Bkrtcy.E.D.N.Y.1987); *Montalto v. Sobel (In re Sobel)*, 37 B.R. 780, 785 (Bkrtcy.E.D.N.Y.1984); *Moonan v. Bevilacqua (In re Bevilacqua)*, 53 B.R. 331, 333 (Bkrtcy.S.D. N.Y.1985); *Seepes v. Schwartz (In re Schwartz)*, 45 B.R. 354, 357 (S.D.N.Y.1985); *Schwalbe v. Gans (In re Gans)*, 75 B.R. 474, 482 (Bkrtcy.S.D. N.Y.1987); *In re Iannelli, supra,* 12 B.R. at 564; *Gualtieri v. Goux (In re Goux)*, 72 B.R. 355, 357 (Bkrtcy.N.D.N.Y.1987); *Federal Deposit Insur-ance Corporation v. Cerar (In re Cerar)*, 84 B.R. 524, 526–27 (Bkrtcy.C.D.Ill.1988); *Colonial–Interstate, Inc. v. Ayers (In the Matter of Ayers)*, 83 B.R. 83, 86 (Bkrtcy.M.D.Ga.1988); *Ashton v. Burke (In re Burke)*, 83 B.R. 716, 722 (Bkrtcy.D. N.D.1988); *Security Title and Guaranty Company v. Stivers (In re Stivers)*, 84 B.R. 852, 854 (Bkrtcy.S.D.Fl.1988); *Hartwig v. Medlin (In re Medlin)*, 74 B.R. 726, 729 (Bkrtcy.N.D.N.Y. 1986).

*Summary Judgment*

■ Summary judgment is appropriate only when the moving party has met his burden of proving that there are no unresolved factual disputes that relate to an issue which is material to the outcome of the litigation. *Corselli v. Coughlin,* 842 F.2d 23, 25 (2d Cir.1988). All ambiguities must be resolved and all reasonable inferences must be drawn in favor of the party against whom summary judgment is sought. *Schiess–Froriep Corp. v. S.S. Finnsailor,* 574 F.2d 123, 126 (2d Cir.1978); *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 10–11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The task before the Court is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *Eastman Machine Co., Inc. v. U.S.,* 841 F.2d 469, 473 (2d Cir.1988), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2509–11, 91 L.Ed. 2d 202 (1986).

The Plaintiff's major contention is that there are no unresolved factual disputes by virtue of a claimed collateral estoppel effect of the default judgment obtained in the District Court Action. The party asserting collateral estoppel has the burden of proving that the requirements of estoppel have been met. *Spilman v. Harley, supra,* 656 F.2d at 229; *Merrill v. Walter E. Heller & Company of Alabama (In re Merrill),* 594 F.2d 1064, 1067 (5th Cir. 1979). As shown above, Plaintiff has failed to sustain its burden of proof in that regard.

Having been rebuffed in efforts to invoke the doctrine of collateral estoppel, Plaintiff now must confront the reality that genuine issues of material fact abound, mandating the denial of the summary judgment motion.

In the answer to the complaint filed in the adversary proceeding and in all papers filed in response to the summary judgment motion, the Debtor denies virtually all the allegations relevant to the exceptions to discharge contained in 11 U.S.C. § 523(a)(2), (4) and (6). Debtor states that he represented himself to and served Plaintiff as an investment adviser and not a broker. (Billings Affidavit In Opposition at ¶ 5). He denies having an equity interest in the brokerage firm of Gilford Securities, Inc. or being an agent servant, or employee of that brokerage firm. (*Id.* at ¶ 9). He stresses that as an investment adviser his compensation was not commission-based, but predicated on "a percentage of monies in the account" and as such received only $3,000 during the one year he managed Plaintiff's account. (*Id.* at ¶ 12). Debtor asserts that margin transactions and transactions in excess of $10,000 were conducted with the consent, knowledge and approval of Plaintiff (*Id.* at 8) and that all investment activities were "well within the guideline" of the agreement between the parties. (*Id.* at ¶ 10). Debtor claims that Plaintiff consented to the opening of a margin account and acquiesced in its maintenance. (*Id.* at ¶ 6). Debtor characterizes various activities in connection with his management of the account as "defensive strategies" taken to protect Plaintiff's assets when "the market took a downturn at the end of 1981 or beginning of 1982". (*Id.* at ¶ 18). The losses in the account, he claims, are attributable to typical "errors in business judgment" that any investment adviser could have made "in the ordinary course of business." (*Id.*). Debtor also claims to have liquidated her account only upon Plaintiff's express instructions to do so. (Billings Supplemental Affidavit In Opposition at ¶ 24).

## CONCLUSION

For all of the reasons hereinabove set forth, we conclude that the requisites for application of the collateral estoppel doctrine have not been satisfied by Plaintiff and Plaintiff has failed to otherwise demonstrate an absence of unresolved material factual disputes. Accordingly Plaintiff's motion for summary judgment is denied.

SETTLE ORDER.