In re Walter J. WRIGHT, Debtor.

FEDERAL TRADE COMMISSION, Plaintiff,

v.

Walter J. WRIGHT, Defendant.

Bankruptcy No. 93–50561. Adv. No. 93–5119.

United States Bankruptcy Court, D. Connecticut.

Oct. 25, 1995.

**2.** *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford*    *Motor Co.,* 616 F.2d 603 (1st Cir.1980).

Mary S. Feinstein, Federal Trade Commission, Division of Marketing Practices, Washington, DC, for plaintiff.

Victoria T. Ferrara, Sherwood, Garlick, Cowell, Diviney & Atwood, Westport, CT, for defendant.

## MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

In this adversary proceeding (hereinafter referred to as the "Dischargeability Action") the Plaintiff, Federal Trade Commission (hereinafter referred to as the "FTC"), seeks to have a certain debt allegedly owed to it by the Debtor, Walter J. Wright (hereinafter referred to as "Wright"), declared to be non-dischargeable in Wright's pending Chapter 7 bankruptcy case under the authority of 11 U.S.C. § 523(a)(7). FTC has moved for summary judgment in the Dischargeability Action based upon the alleged preclusive effect of a prior judgment of the federal District Court. In response, Wright filed, *inter alia,* a Memorandum in Opposition to Motion for Summary Judgment which invites this Court to grant summary judgment in his favor. The Court treats this invitation as a cross-motion for summary judgment, and will dispose of the same in the course of this Memorandum of Decision.

### II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant matter by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(*l* ).

## III. SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56(c), made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, directs that summary judgment enter when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Rule 9(c) of the Local Rules of Civil Procedure of the United States District Court for the District of Connecticut (hereinafter referred to as the "Local District Court Rules") supplements Fed.R.Civ.P. 56(c) by requiring statements of material fact from each party to a summary judgment motion. The material facts set forth in a movant's statement "will be deemed to be admitted unless controverted by the statement required to be served by the opposing party ..." Local District Court Rule 9(c)1.

When ruling on motions for summary judgment "the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing that there are no material facts in dispute and all reasonable inferences are to be drawn, and all ambiguities resolved in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

However, to defeat a properly supported motion for summary judgment the nonmoving party "may not rest upon the mere allegations or denials of its pleadings"; its response "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## IV. UNCONTESTED FACTS

The FTC's summary judgment motion is supported by, *inter alia*, a Statement of Facts pursuant to Local District Court Rule 9(c)1. In opposition thereto, and in support of his own summary judgment request, Wright has filed his Affidavit and a Statement of Material Facts pursuant to Local District Court Rule 9(c)2. Based upon (1) the Affidavit of Walter J. Wright, (2) the parties' respective Statements of Facts, (3) this Court's independent review and judicial notice of the contents of the court file in the District Court Action (as hereinafter defined), and (4) the representations of counsel made at the hearing on this matter held January 11, 1994, the following facts are incontestable and/or not in dispute between the parties.

### A. The District Court Action.

On August 10, 1992, FTC filed a complaint against Walter J. Wright, *et al.* (hereinafter referred to as the "District Court Complaint") in the United States District Court for the District of Connecticut, seeking civil penalties, injunctive and other relief for alleged violations of FTC's "Franchise Rule", 16 C.F.R. Part 436 (hereinafter referred to as the "District Court Action").

In its District Court Complaint FTC alleged that since at least 1987, Wright sold franchises for a chain of retail stores known as "Consignment Galleries" but failed to furnish a disclosure statement to all prospective franchisees as required by the Franchise Rule. FTC further alleged that even those prospective franchisees who did receive a disclosure statement were (1) given unsubstantiated earnings claims about the franchise, (2) furnished with inaccurate financial information about a corporate franchisor, and (3) not told that Wright and another individual had been held liable for fraud in connection with the sale of an unrelated franchise. Notably, the District Court Complaint did not seek monetary redress for the alleged franchisee injury. Rather, only civil penalties and equitable relief were pursued.

A Process Receipt and Return sworn out by a United States Marshal indicates that Wright was served with a Summons and the

District Court Complaint on August 18, 1992. No appearance was made by or on behalf of Wright in the District Court Action, and Wright failed to file or serve an Answer or other responsive pleading therein. Accordingly, on October 30, 1992, the District Court Clerk entered a default against Wright pursuant to Fed.R.Civ.P. 55(a). On January 14, 1993, FTC moved for a judgment by default against Wright pursuant to Fed.R.Civ.P. 55(b), and counsel for FTC certified timely mail service of the same upon Wright.

On February 18, 1993—while FTC's motion for judgment by default was pending with the District Court—Wright filed a voluntary Chapter 7 petition in this Court. Pursuant to 11 U.S.C. § 301, an Order for Relief was simultaneously entered thereon. Wright did not file a Notice of Stay or similar pleading with the District Court to inform that Court of his alleged belief that the District Court Action was automatically stayed under 11 U.S.C. § 362(a). Wright's counsel did notify FTC's counsel on or about March 15, 1993—nearly one month post-petition—of Wright's assertion of the applicability of the automatic stay to the District Court Action. By return letter, FTC's counsel informed Wright's counsel of FTC's belief that the District Court Action was excepted from the automatic stay pursuant to 11 U.S.C. §§ 362(b)(4) and (5), and that it would continue to prosecute said action on the strength of that belief.

On March 24, 1993, the Hon. José A. Cabranes, then Chief United States District Judge for the District of Connecticut, granted FTC's motion for default judgment by endorsement of the face of such motion as follows: "GRANTED absent timely objection or response or any kind. It is so ordered". That same day the District Court entered a Final Judgment and Order on a form supplied by FTC, without apparent alteration, granting FTC, *inter alia,* a monetary judgment against Wright for civil penalties in the amount of $290,000.00 (hereinafter referred to as the "District Court Judgment"). The District Court Judgment specified that the civil penalties were payable to the "Treasurer of the United States".

On or about March 26, 1993, a letter was submitted to the District Court from Wright's counsel seeking *vacatur* of the District Court Judgment on the strength of the automatic bankruptcy stay. On or about April 22, 1993, Wright and FTC were notified of a May 5, 1993 status hearing in the District Court Action. No specific mention of Wright's *vacatur* motion was made in the hearing notice, although the issue of the automatic stay's applicability was taken up and decided by Chief Judge Cabranes at the hearing. Despite the opportunity for argument at that time, Wright's bankruptcy counsel offered little or none, and the FTC's position of stay inapplicability was sustained by the District Court. Neither that decision nor the default judgment itself has been appealed, and the time for such appeal has expired. The District Court Judgment remains wholly unsatisfied.

### B. The Dischargeability Action.

On or about May 19, 1993, FTC filed a Complaint in this Court objecting to the dischargeability of the civil penalty aspects of the District Court Judgment pursuant to 11 U.S.C. § 523(a)(7) (hereinafter referred to as the "Dischargeability Complaint"). On August 31, 1993, Wright filed an untimely Answer to the Dischargeability Complaint by leave of this Court.

The present contested matter within this adversary proceeding was initiated by the FTC's filing of its Motion for Summary Judgment and supporting material on October 27, 1993. Said motion asserts that under the principles of collateral estoppel the factual issues determined in the District Court Action are sufficient to fully adjudicate the nondischargeability of the District Court Judgment under 11 U.S.C. § 523(a)(7). Thus, the argument proceeds, there are no material facts in dispute, and FTC is entitled to judgment as a matter of law within the meaning of Fed.R.Bank.P. 7056(b).

In opposing summary judgment, Wright challenges the propriety of utilizing collateral estoppel to eliminate otherwise disputed material facts. He argues that because the facts material to the Dischargeability Action were not "fully" and "actually" litigated in

the District Court Action, litigation of such facts on the merits cannot be precluded in the context of this dischargeability action. Further, Wright deems relevant his belief that the District Court Action was stayed by his bankruptcy petition, thus eliminating, he thought, the need to formally respond to FTC's default judgment motion.

■ Wright also believes that summary judgment is appropriate in his favor based on his belief that the entry of the District Court Judgment is void due to the pendency of the automatic stay at the time of the judgment's entry, thereby negating a "debt", which is an essential element under 11 U.S.C. § 523(a)(7).[1]

Therefore, the primary and dispositive issue raised in this contested matter is whether, under the circumstances at bar, the default judgment in the District Court Action can collaterally estop Wright from contesting the dischargeability of the underlying debt on the merits.

## V. DISCUSSION

### A. Collateral Estoppel.

■ In the matter *sub judice* the applicability of the doctrine of collateral estoppel is determinative of the FTC's motion for summary judgment. Because the facts underlying Wright's liability for civil penalties have never been admitted by Wright, and are specifically denied in his Affidavit in opposition to the FTC's summary judgment motion, this Court might well conclude that there are genuine issues of material fact as to the dischargeability of Wright's alleged obligation for civil penalties, unless the District

Court Judgment possesses preclusive effect. Conversely, the Court is convinced that if the District Court Judgment is to be given preclusive effect, it is dispositive of all material factual issues, and would entitle FTC to judgment in its favor as a matter of law. This is because under Section 523(a)(7) the existence of a true civil penalty debt to and for the benefit of a governmental unit is alone sufficient to establish nondischargeability.

■ As applied to prior federal court adjudications [2], the doctrine of collateral estoppel is an embodiment of the precept of federal common-law that a "right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies ..." *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897). The purposes served by the doctrine are to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication. *Montana v. United States*, 440 U.S. 147, 153–154, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979).

■ Since at least the time of the 1970 amendments to the Bankruptcy Act—remanding dischargeability questions to the bankruptcy courts—the issue of the preclusive effect of pre-bankruptcy judgments has been debated. In *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the United States Supreme Court all but foreclosed the use of *res judicata* in discharge-

---

1. Wright's cross-motion on this basis can be disposed of relatively easily. Chief Judge Cabranes specifically found that the automatic stay was inapplicable to the District Court Action pursuant to 11 U.S.C. § 362(b)(4) and (5). As a court which enjoys its jurisdiction only on reference from the District Court, 28 U.S.C. § 157(a), this Court has no authority to vacate that Order. Therefore, the District Court Judgment is not void. Yet, even assuming that it were void, that fact is of no consequence to the issue of whether a "debt"—defined by 11 U.S.C. § 101(12) as "liability on a claim"—exists. A "claim" is a "right to payment" which need not be "reduced to judgment". 11 U.S.C. § 101(5). The United States Supreme Court has held under similar

circumstances that the Bankruptcy Code concepts of "claim" and "debt" are co-extensive. *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 558, 110 S.Ct. 2126, 2130–31, 109 L.Ed.2d 588 (1990). It is clear that the subject civil penalty judgment constitutes a "right to payment". *Cf. id.* at 558–59, 110 S.Ct. at 2130–31.

2. Although not implicated by the matter at bar, the source of authority generally compelling federal court application of collateral estoppel in favor of adjudications by *state* courts is 28 U.S.C. § 1738.

ability actions.[3] The Court in *Felsen* left open the question of whether collateral estoppel might operate to preclude litigation of specific issues actually determined in the prior adjudication. *Id.* at 139 n. 10, 99 S.Ct. at 2213 n. 10.

■ It is now clear that collateral estoppel is available to litigants in Bankruptcy Code disputes, and specifically in the context of dischargeability proceedings under 11 U.S.C. § 523(a). *Grogan v. Garner*, 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991). However, a consistent delineation of the elements of the doctrine does not emerge from the pre-*Grogan* authorities. Some of that inconsistency can be traced to a confusion of the standard to be applied when preclusive effect is sought for an issue determined by a prior *state* court adjudication with the standard applicable to a prior *federal* court judgment.

■ Under 28 U.S.C. § 1738 a federal court is required to give a state court judgment the same preclusive effect as would a sister court of the same state. *See Kelleran v. Andrijevic*, 825 F.2d 692 (2d Cir.1987), *cert. denied* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988). Presumably then, bankruptcy courts weighing the preclusive effect of a prior *state* court adjudications, could be compelled to undertake analysis under any of fifty different articulations of the collateral estoppel doctrine.[4]

■ By contrast, when the issues sought to be precluded were decided by a *federal* court, as in the case at bar, the Bankruptcy Court must apply the theoretically uniform federal common law of collateral estoppel. *See Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S.

313, 324 n. 12, 91 S.Ct. 1434, 1440 n. 12, 28 L.Ed.2d 788 (1971). The task remains, however, of discerning the precise limits of the federal common law doctrine. We are not without definitive authority in this area since in *Grogan* the Supreme Court gave its imprimatur to the formulation of the doctrine expressed by the Second Restatement of Judgments. *Grogan v. Garner, supra*, 498 U.S. at 284, 111 S.Ct. at 658.

■ The Restatement (Second) of Judgments articulates the general rule of collateral estoppel as follows: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27. This general statement has been reduced to a multi-part "test" by various courts. *E.g., Graham v. Billings (In re Billings)*, 94 B.R. 803, 808 (Bankr.E.D.N.Y.1989). A typical formulation of this test states that claim preclusion will be available when:

1. the issues sought to be precluded are identical to those involved in the prior action;

2. the issues' determination in the prior action was essential to the prior judgment;

3. the issues were determined by a valid and final judgment; and

4. the issues were actually litigated in the prior action;

*Id.*

FTC seeks to except itself from Wright's anticipated bankruptcy discharge solely un-

---

**3.** Although the present dischargeability action technically is pending in the same Court (albeit, on reference) that determined the District Court Action, *res judicata* is not applicable to these proceedings. Under the doctrine of *res judicata* a final judgment on the merits bars further claims by parties or their privies based on the *same cause of action*. *Brown v. Felsen, supra*, 442 U.S. at 131, 99 S.Ct. at 2209. The Dischargeability Action is a distinct and separate cause of action from the District Court Action.

**4.** Some courts have questioned whether Congress' grant to the federal district courts of exclu-

sive original jurisdiction over bankruptcy supersedes 28 U.S.C. § 1738 and provides for a uniform federal rule of collateral estoppel relating to prior *state* court adjudications. *See e.g., In re Hall*, 95 B.R. 553 (Bankr.E.D.Tenn.1989); *see also Kelleran v. Andrijevic*, 825 F.2d 692 (2d Cir.1987) (dissenting opinion) (analysis in context of claim allowance; citing also the preeminence of the Uniform Bankruptcy Law Clause of the United States Constitution). *Contra In re Byard*, 47 B.R. 700 (Bankr.M.D.Tenn.1985); *but cf. Rally Hill Productions, Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 54–5 (6th Cir.1995).

der the terms of 11 U.S.C. § 523(a)(7). That Section requires (1) that there be a "debt ... for a fine, penalty or forfeiture"; (2) that such debt be "payable to and for the benefit of a government unit"; and (3) that such debt "is not compensation for actual pecuniary loss". The third element is not in dispute and therefore need not be considered as an issue to be precluded via collateral estoppel. Consequently, only the first two elements (hereinafter, the "Disputed Facts") necessitate the following collateral estoppel analysis under the four-part federal, *i.e.* Restatement, standard.

### 1. Identity of Issues.

■ Paragraph 8 of the "Findings" section of the District Court Judgment states that Wright is "... liable for civil penalties up to $10,000 per violation of the Franchise Rule, 16 C.F.R. § 436." Paragraph I(b) of the District Court Judgment decrees that "... Wright shall pay ... to the Federal Trade Commission two hundred ninety thousand dollars ($290,000.00) in civil penalties with the money to be deposited by the Commission into the United States Treasury." Specifically, Paragraph I(d) requires "... payment for civil penalties ... within 30 days of entry of [the] order by certified or cashier's check made payable to the Treasurer of the United States ..." Therefore, there can be no doubt that facts identical to the Disputed Facts—the existence of a civil penalty debt payable to and for the benefit of a governmental unit—were determined in the District Court Action.

### 2. Necessity of Prior Determination.

■ There also can be no doubt that determination of the Disputed Facts was *necessary* to the District Court Judgment. These facts—the existence of a penalty debt and the party to which it was payable—were two of the ultimate issues in the District Court Action. They were not superfluous facts gratuitously determined by the District Court in the course of rendering its ultimate ruling.

### 3. Validity and Finality of Prior Judgment.

■ Wright's pleadings articulate a challenge to the validity of the District Court Judgment based upon a belief that the automatic stay of 11 U.S.C. § 362(a) in effect at the time of the District Court Judgment rendered that judgment void *ab initio*. Unfortunately for Wright, his argument in this regard is presently foreclosed. At its May 5, 1993 status hearing the District Court rejected this very argument, finding that entry of the District Court Judgment was excepted from the automatic stay by 11 U.S.C. §§ 362(b)(4) and (5). This Court concurs with the ruling of the District Court.

Even if this Court disagreed with the prior ruling of the District Court with respect to the applicability of the automatic stay, it would be of no consequence since this Court, which derives its jurisdiction on reference from the District Court, 28 U.S.C. § 157(a), possesses no authority to vacate an order of the District Court. *See* footnote 1, *supra*. Consequently, the Disputed Facts were determined by a valid and final judgment.

### 4. Actual Litigation.

■ Even though the first three prongs of the collateral estoppel formula are met in this case, the critical contest centers on whether the Disputed Facts were the subject of "actual litigation".

■ The requirement that an issue be "actually litigated" to qualify for collateral estoppel does not imply that preclusion is available only for those issues established after a full evidentiary and adversarial trial. Such a rule would undermine the efficacy of the doctrine since only a relatively small percentage of judicial matters are resolved by full trial process. By the same token, there are certain types of dispositions short of full adversarial trial which should not produce preclusive effect in subsequent litigation, either because such effect would not serve the fundamental purposes of the collateral estoppel doctrine or produce an inequitable result. "The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of

the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before." Restatement (Second) of Judgments § 27, cmt. e.

■ The possible disposition permutations in a given case are numerous, and each such disposition is attended by a different level of adversarial "litigation". As a result, a court must resist simply applying a blanket rule based on the appellation assigned the disposition—e.g. *default judgment, summary judgment*, etc.—by the prior court. Rather, each disposition should be addressed on a case-by-case basis. This requires a review of the full record of the prior proceeding, not just the judgment itself. *E.g., Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981); *National Homes Corp. v. Lester Industries, Inc.*, 336 F.Supp. 644, 648 (W.D.Va.1972); *In re Supple*, 14 B.R. 898, 904 (Bankr.D.Conn. 1981); *see also Combs v. Richardson*, 838 F.2d. 112, 113 (4th Cir.1988) (holding that review must be undertaken with "particular care"). This Court has performed such a review of the record of the District Court Action.

■ As Official Comment e to Restatement (Second) of Judgments § 27 recognizes, the entry of a default judgment against a party is not necessarily indicative of that party's state of mind. True, a party's acquiescence to a judgment by default might be tantamount to that party's admission of all material facts necessary to the judgment. But the entry of a default judgment may also evidence lack of actual notice, attorney error, or conscious disregard due to an impending bankruptcy filing. In the latter case, there is often little incentive for a party to contest a civil action if (s)he believes—mistakenly or not—that a bankruptcy discharge will eliminate the need for a contest on the merits. It is these considerations which the Restatement captures in taking the general position that "[i]n the case of a judgment entered by ... default, none of the issues is actually litigated." Restatement (Second) of Judgments § 27, cmt. e.

The Supreme Court's embrace of the Restatement formula in *Grogan* constitutes an endorsement of the Restatement's approach to default judgments, and is consistent with prior Supreme Court discussion of the topic. *E.g., Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 158 n. 8, 83 S.Ct. 554, 562 n. 8, 9 L.Ed.2d 644 (1963). Further, the presumption of lack of "actual litigation" in a default judgment context is a concept that has been embraced by several Courts of Appeal. *M & M Transmissions, Inc. v. Raynor*, 922 F.2d 1146, 1150 (4th Cir.1991); *Spilman v. Harley, supra* at 228 [5]; *Matter of McMillan*, 579 F.2d 289, 292–93 (3d Cir.1978); *see also Harold V. Simpson & Company v. Shuler (In re Shuler)*, 722 F.2d 1253 (5th Cir.1984). The law is similar in other Circuits. *United States v. Gottheiner (In re Gottheiner)*, 703 F.2d 1136, 1140 (9th Cir.1983) (dicta); *In re Rahm*, 641 F.2d 755, 757 (9th Cir.1981), *cert. denied sub nom. Gregg v. Rahm*, 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981) (prior state determination has no collateral estoppel effect; at most can establish *prima facie* case); *Tutt v. Doby*, 459 F.2d 1195, 1199 (D.C.Cir.1972).

Likewise, the overwhelming majority of federal district courts and bankruptcy courts which have considered the issue have held that prior default judgments do not operate to preclude relitigation of issues in the context of bankruptcy dischargeability proceedings. *E.g., Fleet Consumer Discount Co. v. Graves (In re Graves)*, 156 B.R. 949 (E.D.Pa. 1993), *aff'd* 33 F.3d 242 (3d Cir.1994) (state court judgment; but court applies federal (Restatement) standard); *Dein Host, Inc. v. Pignato*, 86 B.R. 318 (D.N.H.1988) (state court judgment; but New Hampshire law deemed consonant with Restatement standard); *Franks v. Thomason*, 4 B.R. 814 (N.D.Ga.1980) (federal court judgment; Bankruptcy Act case); *Hall v. Mady (In re Mady)*, 159 B.R. 487 (Bankr.N.D.1993) (federal court judgment); *Stoll v. Conway (In re Conway)*, 148 B.R. 881 (Bankr. E.D.Wisc.1992) (state court judgment; court finds Wisconsin law consonant with federal (Restatement) standard); *Alvarado v. Kall-*

---

**5.** A Sixth Circuit panel has recently called into question *Spilman's* presumption or "bright-line" rule against the preclusive effect of a state-court default judgment. *Rally Hill Productions, Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 54–5 (6th Cir.1995).

meyer (In re Kallmeyer), 143 B.R. 271, 274 (Bankr.D.Kans.1992) (federal court judgment); Lawrence Steel Erection Co., Inc. v. Piercy (In re Piercy), 140 B.R. 108 (Bankr. D.Md.1992) (state court judgment; but court applies federal (Restatement) formula in its alternate holding); National Union Fire Insurance Company of Pittsburgh, Pa. v. Boyovich (In re Boyovich), 126 B.R. 348 (Bankr. W.D.Wa.1991) (state court judgment; court finds Washington law consonant with federal (Restatement) standard); Cardenas v. Stowell (In re Stowell), 113 B.R. 322 (Bankr. W.D.Tex.1990) (state court judgment; but court views Texas law as supporting Restatement comment e); Ferguson v. Hall (In re Hall), 95 B.R. 553 (Bankr.E.D.Tenn.1989) (state court judgment; but court applies uniform federal standard); Hoffman v. Sheahan (In re Sheahan), 87 B.R. 67 (Bankr.E.D.Mo. 1988) (state court judgment; but court applies uniform federal standard); Sixteen Twenty Eight Bellevue Limited Partnership v. Barigian (In re Barigian), 72 B.R. 407, 410 (Bankr.C.D.Cal.1987) (prior arbitration decision; court utilizes federal standard in its alternative holding); Tolbert v. Clay (In re Clay), 64 B.R. 313 (Bankr.N.D.Ga.1986) (federal court judgment); Berkfield v. Goodman (In re Goodman), 25 B.R. 932, 939 (Bankr. N.D.Ill.1982) (state court judgment; but federal standard applied); Kramer v. Joseph (In re Joseph), 22 B.R. 319, 321 (Bankr.E.D.N.Y. 1982) (state court judgment; but federal (Restatement) standard utilized); First Nat'l Bank of Gainesville v. Grainger (In re Grainger), 20 B.R. 7, 10 (Bankr.D.S.C.1981) (federal court judgment); Manning v. Iannelli (In re Iannelli), 12 B.R. 561, 563 (Bankr.S.D.N.Y.1981) (federal court judgment; Bankruptcy Act case).

The seemingly contrary authority cited by the Plaintiff, and that discovered independently by this court, is readily distinguishable from the facts and context of the present dispute.

■ First, the vast majority of reported bankruptcy decisions giving preclusive effect to issues determined in prior, arguably "default" judgment contexts are cases in which the prior preclusive judgment was rendered by a *state* court. E.g., Rally Hill Productions, Inc. v. Bursack (In re Bursack), 65 F.3d 51 (6th Cir.1995) (Tennessee judgment; debtor-defendant answered and cross-claimed but suffered a jury verdict following his nonappearance at trial); Seay v. Greene (In re Greene), 150 B.R. 282 (Bankr.S.D.Fla. 1993) (Florida judgment; debtor-defendant answered and counterclaimed but suffered default after non-appearance at trial and counsel announced no contest); Pacific Energy and Minerals, Ltd. v. Austin (In re Austin), 93 B.R. 723 (Bankr.D.Colo.1988) (Colorado "consent" judgment); Bend v. Eadie (In re Eadie), 51 B.R. 890 (Bankr. E.D.Mich.1985) (Michigan judgment; default was discovery sanction); Harris v. Byard (In re Byard), 47 B.R. 700 (Bankr.M.D.Tenn. 1985) (Kansas judgment; debtor-defendant's attorney appeared and withdrew; court heard live testimony). Each of these cases explicitly or implicitly adopts the view that 28 U.S.C. § 1738 compels initial recourse to the collateral estoppel law of the prior forum state[6]; which, as noted *supra*, admits the possibility of disparate individual state formulations and applications of the collateral estoppel doctrine which may be, and often are, contrary to the Restatement rule endorsed by the United States Supreme Court in *Grogan*. Thus, because the case *sub judice* concerns the preclusive effect of a prior *federal* court adjudication, and is governed by, federal common law (*i.e.* Restatement) standards, these decisions have no real precedential authority or persuasive impact here.

Other cases considering the preclusive effect of prior state-court judgments utilize or reference a federal collateral estoppel standard, but are distinguishable from the present case due to the nature of the previous "default". E.g., Crain v. Limbaugh (In re

**6.** When federal courts preside over proceedings over which they enjoy subject matter jurisdiction exclusive of the state courts, they should not only consider the preclusive effect of prior state-court adjudications per § 1738, but also the question of whether "the concerns underlying ... [the] ... particular grant of exclusive jurisdiction justify a finding of an implied partial repeal of § 1738." *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 386, 105 S.Ct. 1327, 1335, 84 L.Ed.2d 274 (1985).

*Limbaugh)*, 155 B.R. 952, 956–57 (Bankr. N.D.Tex.1993); *Bishop v. Herwig (In re Herwig)*, 77 B.R. 662, 663–64 (Bankr.S.D.Ill. 1987). In *Limbaugh* the debtor-defendant was represented by counsel in the prior proceeding, filed an answer admitting the relevant conduct, but alleged several grounds of justification and interposed a counterclaim. The default was a discovery sanction, and the debtor-defendant fully participated in a subsequent hearing in damages. In *Herwig* the *pro-se* defendant filed an answer and counterclaim in the prior action. He was eventually defaulted for failing to appear for trial, at which time the trial judge heard the plaintiff's testimony and received exhibits.

This Court is cognizant of two decisions, *Katahn Associates, Inc. v. Wien (In re Wien)*, 155 B.R. 479 (Bankr.N.D.Ill.1993) and *Jones v. Wilson (In re Wilson)*, 72 B.R. 956 (Bankr.M.D.Fla.1987), which accord preclusive effect to prior arguably unopposed dispositions by a *federal* court. The decision in *Wien* is factually distinguishable from the present case since in that case the prior adjudication by the district court was by unopposed summary judgment, not default judgment. Also, Wien's failure to oppose summary judgment followed his full participation in, and litigation of, the case in the district court. More fundamentally however, this Court deems *Wien*'s legal analysis incomplete. Specifically, the decision seems to ignore the relevant and binding authority of *Grogan*. For example, *Wien* states that the "Supreme Court has left open the issue of whether the doctrine of collateral estoppel may be applied in dischargeability proceedings." *Wien, supra,* at 155 B.R. at 484. *Grogan*, at fn. 11, 111 S.Ct. at 658 fn. 11, conclusively clarified that collateral estoppel applies in dischargeability actions. In light of *Wien*'s oversight of *Grogan* it is not surprising to find that *Wien*'s discussion of the appropriate federal collateral estoppel standard, and specifically the "actually litigated" element thereof, excludes any reference to the *Grogan*-endorsed Restatement formulation.

Likewise, the Memorandum Decision in *Wilson* proceeds without the benefit of *Grogan*'s endorsement of the Restatement. This

is understandable since *Wilson* predates *Grogan*. In light of *Grogan* this Court disagrees with *Wilson*'s reasoning that a theoretical "opportunity to defend" is sufficient to satisfy the requirement of "actual litigation". Further, the *Wilson* Court's entire discussion of collateral estoppel may be dicta since the Bankruptcy Court there apparently heard testimony fully supportive of the grounds of non-dischargeability. *Wilson, supra,* 72 B.R. at 959.

▆▆ It is a fundamental tenet of federal common law that a "judgment by default only admits for the purpose of the action the legality of the demand or claim in suit ... it does not make the allegations of the ... complaint evidence in an action upon different claim." *See Cromwell v. County of Sac,* 94 U.S. 351, 356, 24 L.Ed. 195 (1876). This rule should apply with even greater force in matters adjudicated by default in relative temporal proximity to a defaulted party's bankruptcy petition.

The incentive of a defendant to defend a pre-bankruptcy action for damages often differs from the incentive of a bankruptcy debtor to defend a complaint seeking to have a debt declared forever nondischargeable. Defendants in financial distress may decide to put their financial house in order in one forum and one proceeding, *i.e.* through bankruptcy. This is an important benefit which bankruptcy affords. Therefore, a debtor might reasonably suffer default judgments prior to bankruptcy, relying on their presumptive dischargeability. Only when a creditor holding such a judgment seeks to have that particular debt excepted from discharge will such a debtor have the incentive to mount a defense to the creditor's factual allegations supporting nondischargeability. Such principles are in harmony with the Restatement's Official Comment e, which recognizes a cost-benefit analysis as one of the "many reasons why a party may choose not to raise an issue, or to contest an assertion."

Similarly, such a rule does not offend the purposes served by the collateral estoppel doctrine. Although judicial resources are limited and valuable, relatively few are expended in processing a default judgment. Likewise, the party seeking the benefit of

issue preclusion cannot be said to have been oppressed or harassed since its reasonable expectations *ex ante* would have been the necessity of at least one trial on the merits. And if collateral estoppel is denied, at most only one trial will occur, albeit in the bankruptcy court rather than the prior forum.

Returning to the facts of the case *sub judice,* Wright suffered a classic default judgment in the District Court Action. No appearance was filed by or on behalf of Wright in that action, and no responsive pleading was interposed to the FTC's District Court Complaint. Only after the commencement of his personal bankruptcy case did Wright seek to derail the adjudication process in the District Court. There is also nothing in the record before this Court which evidences any explicit or tacit manifestation by Wright of an intention that his default in the District Court Action forever preclude him from litigating the facts essential to such judgment in future litigation with FTC. To the contrary, the uncontested facts are indicative of a paradigmatic debtor's "slide into bankruptcy".

## VI. CONCLUSION

This Court concludes that facts material to the Dischargeability Action, *i.e.* the Disputed Facts, were not "actually litigated" in the District Court Action. Consequently, FTC has failed to carry its burden of establishing its entitlement to the use of collateral estoppel to preclude the full evidentiary litigation of such facts in this Court. There being no further grounds alleged by FTC and Wright justifying summary judgment in their respective favors, the parties' cross motions for summary judgment shall be denied by separate order.