**In re ASTROLINE COMMUNICATIONS COMPANY, Limited Partnership, Debtor.**

**Martin W. HOFFMAN, Trustee, Plaintiff,**

v.

**ASTROLINE COMPANY, INC., Defendant.**

Bankruptcy No. 88–21124.

Adversary No. 98–2085.

United States Bankruptcy Court, D. Connecticut.

Oct. 14, 1998.

Martin W. Hoffman, Walter J. Onacewicz, West Hartford, CT, for Trustee–Plaintiff.

Robert A. Izard, Jr., Brian O'Donnell, Robinson & Cole, LLP, Hartford, CT, for Defendant.

### RULING ON DEFENDANT'S MOTION TO DISMISS COMPLAINT

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I. BACKGROUND

Martin W. Hoffman, Trustee ("the Trustee") of the Chapter 7 case of Astroline Communications Company Limited Partnership ("the Debtor"), filed a complaint on June 12, 1998 seeking subordination to all other creditors of a claim held by the defendant, Astroline Company, Inc. ("the Defendant"). The complaint is founded on section § 510(c)(1) of the Bankruptcy Code which, in relevant part, provides: "The court may (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim...." 11 U.S.C. § 510(c)(1) (1993).

The Defendant's unobjected-to proof of an unsecured claim is in the amount of $7,537,-703.00 based upon two promissory notes executed by the Debtor in favor of the Defendant on December 1, 1997 and September 20, 1988, in the original amounts of $4,000,000 and $2,930,000, respectively. The Defendant is a limited partner of the Debtor whose bankruptcy case was commenced by an involuntary creditors' petition on October 31, 1988. At that time, the Debtor owned and operated a Hartford-based television station.

The nub of the Trustee's averments in the complaint to support subordination is that "at least $4,000,000 of the alleged debt was originally an equity contribution which was subsequently recharacterized as a debt" and that "the Debtor was under-capitalized at the time(s) the alleged debts of the Debtor to the Defendant were incurred." (Complaint at 2, ¶¶ 13 and 14.) The Trustee also contends the Defendant was an "insider" of the Debtor as a "person in control of the debtor." (Id. At ¶ 12.)

The Defendant, on July 14, 1998, filed its motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), made applicable in adversary proceedings by Fed.R.Bankr.P. 7012(b), for "failure to state a claim upon which relief can be granted." The Defendant contends that the Trustee's "claim is barred by principles of res judicata and collateral estoppel." (Motion to Dismiss at 1.)

### II. CONTENTIONS

The underpinning of the Defendant's argument for dismissal is this court's ruling in *Hoffman v. WHCT Management Inc. (In re Astroline Communications Company Ltd. Partnership)*, 188 B.R. 98 (Bankr.D.Conn. 1995) [hereinafter "*Astroline I*"][1] which involved the present parties. In *Astroline I* the court held that the Defendant's (and its general partner's) "exercise of control over the Debtor does not meet the requisite standard of substantially the same as the exercise of the powers of a general partner" so that the Defendant was not liable to the Trustee under the provisions of section 723(a) of the Bankruptcy Code.[2]

The Defendant argues that where the court so concluded in *Astroline I*, the doctrine of collateral estoppel now bars the Trustee from relitigating what the Defendant

---

**1.** *Astroline I* was affirmed on the basis of the bankruptcy court's findings and conclusions, after district court affirmance on grounds different from those relied upon by the bankruptcy court, by the United States Court of Appeals for the Second Circuit on April 17, 1997 by way of a "Summary Order." The order states: "This summary order will not be published in the federal reporter and may not be cited as precedential authority to this or any other court, but may be called to the attention of this or any other court in a subsequent stage of this case, in a related case, or in any case for purposes of collateral estoppel or res judicata."

**2.** Section 723(a) provides:

If there is a deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter concerning a partnership and with respect to which a general partner of the partnership is personally liable, the trustee shall have a claim against such general partner to the extent that under applicable nonbankruptcy law such general partner is personally liable for such deficiency.

11 U.S.C.A. § 723(a) (West Supp.1998).

asserts is the identical issue in the present proceeding, namely the issue of the Defendant's control of the Debtor. The Defendant further argues that the doctrine of *res judicata* bars the Trustee's "claim, because he is bringing a new claim which he could have asserted in *Astroline I.*" (Defendant's Original Memorandum at 10.)

## III. DISCUSSION

■ "Normally the defenses of *res judicata* and collateral estoppel are affirmative defenses to be raised in an answer under Rule 8(c) of the Federal Rules of Civil Procedure. 'However, when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer.'" *9281 Shore Rd. Owners Corp. v. Seminole Realty Co. (In re 9281 Shore Road Owners Corp.)*, 214 B.R. 676, 684 (Bankr.E.D.N.Y.1997) [hereinafter *Shore Road I*] (quoting *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir.1992)). Accordingly, the motion to dismiss is properly before the court.

### A. COLLATERAL ESTOPPEL

■ "As applied to prior federal court adjudications, the doctrine of collateral estoppel is an embodiment of the precept of federal common law..." *Federal Trade Comm'n v. Wright (In re Wright)*, 187 B.R. 826, 831 (Bankr.D.Conn.1995); *Also see Centra Mortgage Holdings, LTD. v. Mannix*, 18 F.Supp.2d 162, 164 (D.Conn.1998) (State law determines preclusive effect of prior state court action, while federal common law determines preclusive effect of prior action in federal court.).[3] The U.S. Supreme Court has summarized the elements of the doctrine of collateral estoppel: "Under collateral estoppel, once an issue is *actually* and *necessarily determined* by a *court of competent jurisdiction*, that determination is conclusive in subsequent suits based on a different cause of action involving a *party* to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210, 217 (1979) (emphasis added). Because there is no dispute that the parties involved in this action and in *Astroline I* are the same, and that questions raised in the earlier proceeding were actually and necessarily determined by a court of competent jurisdiction, the relevant inquiry is whether the issue involved in *Astroline I* is determinative of the outcome of this proceeding.

■ Whether the Defendant could be considered a general, rather than limited, partner of the Debtor was a question determined under Massachusetts law, not the Bankruptcy Code. In *Astroline I*, this court applied the standards of the 1982 Massachusetts Limited Partnership Act, Mass. Gen. L. ch. 109, § 19(b)(2) (1982) [hereinafter "MLPA"], determining that the Defendant would be liable as a general partner *only* if it *actually* exercised "*all* of the powers of a general partner." *Astroline I* at 105 (emphasis added ). The Bankruptcy Code's definition of "insider" is far more expansive. General partners are but one subset of those who could be considered "insiders." 11 U.S.C.A. § 101(31).[4] As a result, while a finding in *Astroline I* that the Defendant exercised control as a general partner of the Debtor would have been sufficient to consider the Defendant an "insider" for bankruptcy purposes, *see* 11 U.S.C. § 101(31), the converse does not follow; not having exercised control as a general partner does not necessarily imply that one is not an "insider," since that term, as defined in the Bankruptcy Code includes, but is not limited to, general partners. 11

---

3. Although some areas of controversy exist between the federal doctrine and those of some states regarding default judgments and mutuality, neither of those areas are relevant to this proceeding.

4. § 101(31) provides in relevant part:
   (31) "insider" includes—
    . . .
   (C) if the debtor is a partnership—
    (i) general partner in the debtor;

    (ii) relative of a general partner in, general partner of, or person in control of the debtor;
    (iii) partnership in which the debtor is a general partner; .
    (iv) general partner of the debtor; or
    (v) person in control of the debtor;
    . . . .

11 U.S.C.A. § 101(31) (West 1993).

U.S.C. §§ 101(31), 102(3).[5] The broader issue of whether the Defendant was an insider was not litigated in the prior proceeding.

The U.S. Supreme Court discussed the necessity of limiting collateral estoppel to issues where not only the same conduct is involved, but where the same standards are applied. *See Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767, 776 n. 10 (1979) (If a prior state court adjudication were to determine factual issues *"using standards identical"* to those applicable in bankruptcy proceedings, "then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.") (emphasis added).

In *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the Supreme Court considered whether a state court decision that a debtor's conduct was or was not fraudulent would preclude a bankruptcy court from relitigating that issue in a nondischargeability proceeding. Even though state law determines the elements of fraud, in bankruptcy as well as nonbankruptcy proceedings, the Court found that relitigation would be precluded only if the same standard of proof also applied to both proceedings. Unless every aspect of the issue involved is identical in both proceedings, the Court noted, a prior finding that one did *not* meet the requirements of the more restrictive criteria would not preclude relitigation of the broader issue in the subsequent proceeding. *Id.* at 286 n. 12, 111 S.Ct. 654.

The scope of the decision in *Astroline I* was limited to whether the Defendant's control of the Debtor was so extensive that, under the MLPA, the Defendant would be liable as a general partner for claims against the Debtor. Since that issue was the only one that was actually and necessarily determined in that proceeding, and because Massachusetts state law provides the appropriate standard for determining whether the Defendant's status is that of a general or limited partner, it is the only issue precluded from relitigation under the criteria for collateral

estoppel. The question of the Defendant's liability as a general partner or codebtor is not at issue in this proceeding, while the question of whether the Defendant was an insider of the Debtor, as that term applies in the bankruptcy context, was not at issue in *Astroline I.* Some of the facts offered to substantiate the trustee's claim in *Astroline I* may be relevant in determining whether the Defendant is an insider; however, the standards applicable to such a determination are quite different from those of the MLPA.

In this regard, the Defendant's reliance on *Shore Road* is misplaced. In *Shore Road,* every act of inequitable conduct that was alleged to have given rise to the claim for equitable subordination involved conduct where the bankruptcy court looks to state law to determine the applicable standards, e.g. mortgage validity, fraud, etc. *Shore Road,* 214 B.R. at 682–83. Since the state court had already exonerated the defendants, applying the same standards that would be applicable to a bankruptcy proceeding, collateral estoppel properly applied to prevent relitigation of those issues.

This proceeding concerns whether the Defendant's claims should be equitably subordinated to those of the general unsecured creditors. Section 510(c) of the Bankruptcy code permits the bankruptcy court "under principles of equitable subordination" to subordinate all or part of one claim to another. 11 U.S.C. § 510(c)(1). The legislative history indicates that Congress "intended that the term 'principles of equitable subordination' follow existing case law and leave to the courts the development of this principle." *Stop & Shop Cos., Inc. v. Rosow (In re Rosow),* 13 B.R. 203, 204 (Bankr.D.Conn. 1981) (quoting 124 Cong.Rec. H 11,095 (Sept. 28, 1978) S 17,412 (Oct. 6, 1978)).

■ The courts have adopted a three-prong test to determine whether a bankruptcy court may equitably subordinate a claim. The requirements are: (1) inequitable conduct by that claimant; (2) harm to other creditors of the Debtor or unfair advantage

---

5. § 102 provides in relevant part:
   In this title—
      . . .

(3) "includes" and "including" are not limiting;
11 U.S.C.A. § 102(3) (West 1993).

to the claimant as a result of such conduct, and (3) that subordination would not be inconsistent with other aspects of the Bankruptcy Code. *Benjamin v. Diamond (In re Mobile Steel)*, 563 F.2d 692, 699–700 (5th Cir.1977); *also see United States v. Noland*, 517 U.S. 535, 538–39, 116 S.Ct. 1524, 1526, 134 L.Ed.2d 748, 754 (1996) (citing the *Mobile Steel* test as that generally followed).

■ While a creditor's control of a debtor is often a consideration in an equitable subordination proceeding, control or insider status alone, cannot provide a sufficient basis for such subordination. *Comstock v. Group of Int'l Investors*, 335 U.S. 211, 229, 68 S.Ct. 1454, 1463, 92 L.Ed. 1911, 1923 (1948) ( "It is not mere existence of an opportunity to do wrong that brings the rule into play; it is the unconscionable use of the opportunity afforded by the domination to advantage itself at the injury of the subsidiary that deprives the wrongdoer of the fruits of his wrong."); *Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.)*, 926 F.2d 1458, 1467 (5th Cir.1991) ("Our inquiry does not end simply by finding an insider relationship. The cases are clear that the mere fact of an insider relationship is insufficient to warrant subordination.").

■ If a creditor is shown to be an insider of the debtor, its conduct is subject to a higher level of scrutiny, and the burden of proof is shifted, with the insider being required to prove its good faith and fair dealing. *Official Comm. of Unsecured Creditors of Interstate Cigar Co. v. Bambu Sales, Inc. (In re Interstate Cigar Co.)*, 182 B.R. 675, 681 (Bankr.E.D.N.Y.1995) ("Since the claim is that of an insider of the Debtor, the Court is required to weigh two principles relative to the inequitable conduct: 1) following the Plaintiff's presentation of unfair conduct, the Defendant has the burden to demonstrate the good faith and fairness of the disputed transactions and 2) the Court gives 'special scrutiny' to the Defendant's transactions with the Debtor.")

Since (1) the ruling in *Astroline I* determined only that the Defendant did not exercise control as a general partner of the Debtor, and did not eliminate the possibility that the Defendant could nevertheless be considered an "insider" under the more expansive criteria applicable to the Bankruptcy Code, and (2) since insider status alone, even if proved, would not be sufficient for equitable subordination, the doctrine of collateral estoppel does not support Defendant's motion to dismiss.

## B. RES JUDICATA

■ Unlike collateral estoppel, the doctrine of *res judicata* not only precludes relitigation of issues actually decided on the merits, but may also bar litigation of certain claims not raised in the prior proceeding. *Brown v. Felsen*, 442 U.S. 127, 138 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767, 776 n. 10 (1979). Because it "blockades unexplored paths that may lead to truth...[i]t therefore is to be invoked only after careful inquiry." *Id.* at 132, 99 S.Ct. 2205.

■ In *Anaconda–Ericsson, Inc. v. Hessen (In re Teltronics Services, Inc.)*, 762 F.2d 185, 190 (2d Cir.1985) [hereinafter *Teltronics* ], the Second Circuit outlined the four-part test to be applied in determining whether a suit is to be precluded pursuant to the doctrine of *res judicata.* "[T]his doctrine applies to preclude later litigation if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Teltronics* 762 F.2d at 190.

The first two requirements, that the prior holding, *Astroline I*, constituted a final judgment on the merits, and that it was rendered by a court of competent jurisdiction have been satisfied. Because the present plaintiff and defendant were both parties to *Astroline I*, the third requirement is also satisfied.

■ The dispositive question then becomes whether the fourth requirement, that both suits involve the same cause of action, is satisfied. In determining whether this requirement is satisfied, the Second Circuit has indicated "that the test for deciding the sameness of claims requires that the same transaction, evidence, and factual issues be involved. *N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1259 (2d Cir.1983).

Also dispositive to a finding of preclusive effect is whether an independent judgment in a separate proceeding would 'impair or destroy rights or interests established by the judgment entered in the first action.' *Herendeen v. Champion Int'l Corp.*, 525 F.2d 130, 133 (2d Cir.1975)." *Sure–Snap Corp. v. State St. Bank & Trust Co.*, 948 F.2d 869, 874 (2d Cir.1991); *see also Corbett v. MacDonald Moving Services, Inc.*, 124 F.3d 82, 88 (2d Cir.1997) (emphasizing the last inquiry in the bankruptcy context).

■ The trustee's plea for equitable subordination of the Defendant's claims does not depend on the same transaction, evidence and factual issues as those presented in *Astroline I*. In the complaint seeking equitable subordination, the trustee has alleged that (1) the Defendant was an "insider," and (2) that the Defendant recharacterized its equity interest as debt (3) while the debtor was insolvent. *Astroline I* dealt only with whether the extent of the Defendant's control over the debtor was sufficient to render it liable as a general, rather than a limited, partner, under the MLPA. "[T]he circumstance that several operative facts may be common to successive actions between the same parties does not mean that the claim asserted in the second is the same claim that was litigated in the first. Whether or not the first judgment will have preclusive effect depends in part on whether ... the facts essential to the second were present in the first." *United Technologies*, 706 F.2d at 1259–60. The current proceeding could not have been adjudicated solely on the basis of the facts upon which *Astroline I* relied.

While control is relevant in determining whether the Defendant was an insider of the debtor, insider status is not sufficient to justify equitable subordination; it merely establishes the level of scrutiny to be applied and the burden of proof. "The reason the transactions of insiders will be closely studied is because such parties usually have greater opportunities for such inequitable conduct, not because the relationship itself is somehow a ground for subordination." *Fabricators, Inc.*, 926 F.2d at 1465.

Evidence of inequitable conduct and unfair advantage or harm to other creditors is required for equitable subordination. *Mobile Steel*, 563 F.2d at 699–700. In this proceeding, the trustee alleges that the Defendant was an insider of the debtor, and recharacterized its equity interest as a loan while the debtor was undercapitalized. Taken together, these three allegations may considered sufficient to satisfy the *Mobile Steel* three-part test. *Summit Coffee Co. v. Herby's Foods, Inc. (In re Herby's Foods, Inc.)*, 2 F.3d 128, 132 (5th Cir.1993).

With regard to the final criteria for determining whether both suits involve the same cause of action, an equitable subordination proceeding would not impair any rights or interests established in the prior proceeding. *Astroline I* concerned whether the assets of the Defendant could be reached to satisfy creditors of the debtor. This proceeding deals only with the priority of the Defendant's claims against the debtor's estate. Regardless of its outcome, the Defendant's other assets will remain out of reach as determined under the MLPA. While the trustee might have joined this claim in the prior proceeding under Fed.R.Bankr.P. 7018, he was not required to do so. Such joinder is permissive, not mandatory.

The court finds that the present proceeding does not involve the same cause of action as *Astroline I*. It is not barred by the doctrine of *res judicata.*

## IV. CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss is denied. It is

SO ORDERED.